[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-16091
Non-Argument Calendar
_____

D.C. Docket No. 8:10-cv-00757-SDM-DNF


MICHAEL A. NYE,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 26, 2013)

Before HULL, JORDAN, and FAY, Circuit Judges.

PER CURIAM:

Michael A. Nye appeals the district court's order affirming the Social

Security Administration's denial of his applications for disability insurance

benefits and supplemental security income.  Nye argues that the Administrative Law Judge ("ALJ") improperly concluded that he had the residual functional capacity ("RFC") to perform his past relevant work.  Further, he argues that the ALJ improperly discredited his testimony and improperly mischaracterized and discredited the medical opinion of his treating physician.  For the reasons set forth below, we affirm the district court's order.

I.

Nye filed concurrent applications for disability insurance benefits and supplemental security income, pursuant to Titles II and XVI of the Social Security Act ("SSA"), on May 23, 2007.  In his applications, Nye alleged that he was disabled due to an unspecified condition with an onset date of March 30, 2007.  His applications were denied initially and upon reconsideration.  Nye was granted an administrative hearing before an ALJ.

At the hearing, Nye testified that he was 53 years' old and he had studied applied music in college, but he did not receive a college degree.  Since approximately five years prior to the hearing, Nye had lived in an assisted living facility for individuals with mental health issues, and the facility was operated by the Boley Centers for Behavioral Healthcare ("Boley").  As to his past employment, Nye had worked as a server at a restaurant and as a cashier at an Albertsons.  However, Nye could not retain employment because he "dealt with a

2

lot of confusion," and he had trouble "working with people and [with] the mechanics of the job itself." Nye also had problems with being absent from work, and his performance level was "very low." As to Nye's mental health, he has severe depression and very poor sleep habits. Further, when Nye is confronted with large groups of people, he "freeze[s] up" and has "racing thoughts" that are "pretty severe." Nye also experiences confusion that prevents him from retaining information, and he has experienced "bou[]ts of paranoia." Nye had taken psychotropic medicine for his mental health issues and those medicines were "somewhat effective." Nye also had several physical ailments, including a lung disorder, hypertension, fatigue, colon cancer, esophagitis, and esophageal varices (enlargement of blood vessels). Nye indicated that he can do "very basic" household chores, including a limited amount of cooking, and his only hobby is sketching. Finally, as to the reason that Nye is unable to work full-time, he stated, "I can't concentrate. I can't seem to deal with people and do a physical job at the same time. . . My thoughts[] run away from me." Further, Nye testified that his condition has not improved with therapy or medicine.

Nye's medical records showed that Dr. Randolph Hemsath examined him on April 6, 2005, and indicated that he had a history of problems with alcohol, depression, bipolar disorder, and possible attention deficit hyperactivity disorder. Further, Nye had experienced feelings of "moderate depression," but he was not

3

suicidal.  However, Nye was sleeping "pretty good" and, although he complained of ongoing anxiety, he had no recent experiences of severe panic.  Additionally, Nye had ongoing problems with having a poor attention span and poor concentration.  As to Nye's psychiatric history, Dr. Hemsath noted that Nye had a history of manic symptoms.  However, Nye was "alert and oriented," and he appeared to be cognitively "intact."  Further, Nye's insight and judgment appeared adequate, but he did have some "moderate depression and minimal anxiety as well as a mild tremor."  Nye was taking a variety of medications for his conditions.  The report diagnosed Nye with bipolar disorder and alcohol dependency that had been in remission for one month, and it noted that his "[g]lobal assessment of functioning" ("GAF") score was 42.  Ultimately, Dr. Hemsath recommended that Nye begin taking Lamictal, a mood disorder medication.

On December 10, 2007, Nancy Dinwoodie, M.D., completed a psychiatric review technique for Nye, and she concluded that Nye had mild restrictions in activities of daily living and mild difficulties in maintaining concentration, persistence, or pace.  Further, Dr. Dinwoodie believed that Nye had moderate difficulties in maintaining social functioning.  As to the functional capacity assessment, Dr. Dinwoodie concluded that Nye was capable of: (1) understanding and following instructions; (2) sustaining concentration for task completion; and (3) completing a full workday and workweek.

4

On August 17, 2007, Timothy Foster, Ph.D., completed a Mental RFC Assessment for the Social Security Administration.  Dr. Foster noted that Nye had moderate limits in his ability to concentrate due to racing thoughts, as well as moderate limits in his ability to work within a schedule and maintain regular attendance.  Nye also had moderate limits in his "ability to complete a normal workday or workweek without interruptions from his psychologically based symptoms."  Additionally, Nye appeared to have moderate limits in the ability to relate appropriately to others and to adapt to changes in the workplace.  However, Nye was able to sustain concentrated, task oriented activity.  Dr. Foster also completed a psychiatric review technique for Nye, and he concluded that Nye had mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace.  Dr. Foster noted that Nye's treatment records indicated that his condition had improved since he started taking Lithium.

The record also contained extensive notes from Nye's individual counseling and group therapy sessions at Boley from 2007 to 2009.  Throughout the sessions, Nye occasionally reported symptoms of anxiety, manic behavior, racing thoughts, difficulties with concentration, depression, and sleeplessness.  However, Nye also indicated on several occasions that he could control his symptoms with medication, coping skills, and utilizing his support system.

5

Further, the record included notes from Nye's participation in the Life Enhancement Activity Program ("LEAP"), a treatment program at Boley, from May 2008 until June 2009. While enrolled in the program, Nye attended group therapy sessions multiple days per week from 8:30 a.m. until 2:00 p.m. During the sessions, the group discussed various topics, including coping skills and ways to manage symptoms of depression, mania, anxiety, and substance abuse. Further, the participants rated their recovery process on a scale of one to ten, with one indicating extreme risk for relapse and ten indicating stability in their mental health or dependency recovery process. On numerous occasions, Nye rated his mental health recovery at a level nine. On June 11, 2009, Nye was discharged from the program, and his discharge summary indicated that he had made "significant changes" during his enrollment in LEAP. Specifically, Nye was stable on his medications, and his recovery was progressing well.

The ALJ found that Nye was not disabled under the SSA. Specifically, Nye has the following severe impairments: chronic obstructive pulmonary disease, secondary to emphysema; hepatitis C; lumbar scoliosis with resultant low back pain; bipolar disorder; and a history of alcohol abuse, in current remission. However, Nye's physical and mental impairments did not meet or equal one of the listed impairments in 20 C.F.R. § 404, Subpart P. Moreover, in light of the record as a whole, Nye had the RFC to perform a full range of medium work, as defined

by the SSA.  Nye had no manipulative, visual, communicative, postural, or environmental limitations.  Further, he could hear, understand, remember, and carry out simple, routine, and complex work instructions.  Nye had only moderate limitations in his ability to interact appropriately with coworkers, supervisors, and the general public.  In making these findings, the ALJ considered all of Nye's symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence as well as opinion evidence.

The ALJ further noted that Nye had alleged an inability to work due to bipolar disorder, which produced symptoms including disturbed sleep, confusion, paranoia, hallucinations, reduced ability to tolerate others, fatigue, and lack of concentration.  He reported some improvement from medications, but he also reported side effects from the medication, including nervousness and sleepiness. After careful consideration of the evidence, the ALJ found that Nye's medical impairments could reasonably be expected to cause at least some of his alleged symptoms, but that Nye's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the RFC assessment.  Although Nye may experience some degree of fatigue, the medical record did not document any condition that would support Nye's allegations regarding the extent of his fatigue.  Further, "Nye's levels of activity reported in his medical records, as well as his hearing testimony that he

had begun bowling, suggest that he is far more active than he represents." Moreover, Nye had presented only minimal evidence related to the relevant time period, none of which establish limitations sufficient to be disabling.

Further, the ALJ found that Nye's medical records contradicted his testimony that he experienced only marginal improvement from his medications. Specifically, the notes from Nye's counseling sessions frequently referenced the improvement resulting from his medications, and Nye reported "on multiple occasions that his mental status [was] a nine on a ten-point scale." Nye's reports, as contained in these notes, "wholly refute" his current statements regarding his alleged disability. Additionally, Nye had not provided any statements from a treating physician indicating that he was unable to work or that he had a condition that would limit his activities. These factors weigh against a finding that Nye has a disability. In sum, the ALJ concluded that the RFC assessment was supported by Nye's medical records; the report of the state agency's consultant, as modified by Nye's subjective statements to the extent that they were credible; and the ALJ's review of the record as a whole. The ALJ further found that Nye was capable of performing past relevant work as a restaurant server. Specifically, the ALJ noted that such work can be generally performed at a medium, unskilled level but, even if not, many other unskilled jobs were available at or below the medium exertion level. Thus, Nye could not be considered disabled.

8

The Appeals Council denied Nye's request for review.  The magistrate judge issued a report and recommendation that the district court affirm the Commissioner's decision.  Over Nye's objections, the district court adopted the recommendation and affirmed the decision.

## II.

Similarly to the district court, we must review the agency's decision and determine whether its conclusion, as a whole, was supported by substantial evidence in the record.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotations omitted).  "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]."  *Id.*

> The Commissioner uses
>
> a five-step, sequential evaluation process . . . to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on [the RFC] assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Id*. At step four of the sequential analysis, the claimant bears the burden of demonstrating that he cannot return to his past relevant work. *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990). If the claimant can return to his past relevant work, the ALJ will conclude that the claimant is not disabled. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The RFC is "that which an individual is still able to do despite the limitations caused by his or her impairments." *Id.* The ALJ considers all of the evidence in the record in determining the claimant's RFC. *Id.*

The individual seeking Social Security disability benefits bears the burden of proving that he is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). A claimant may establish that he has "a disability through his own testimony of pain or other subjective symptoms." *Dyer*, 395 F.3d at 1210. In such a case, the claimant must show:

> (1) evidence of an underlying medical condition and either
> (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.* In evaluating a claimant's testimony, the ALJ should also consider: (1) the claimant's daily activities; (2) the "duration, frequency, and intensity" of the claimant's symptoms; (3) "[p]recipitating and aggravating factors"; (4) the effectiveness and side effects of any medications; and (5) treatment or other

measures taken by the claimant to alleviate symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  The ALJ is to consider these factors in light of the other evidence in the record.  *Id.* §§ 404.1529(c)(4), 416.929(c)(4).  We will not disturb a clearly articulated credibility finding that is supported by substantial evidence.  *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).  Finally, the Commissioner has noted that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings."  65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000).

As an initial matter, Nye concedes that, before the district court, his arguments related only to the limitations from his mental impairments.  Thus, we may decline to address any issues regarding Nye's physical limitations.  *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (explaining that, as a general principle, when a claimant fails to raise an issue in the district court, we may decline to address it).  Regardless, in his appeal brief, Nye does not specifically discuss any of his physical impairments or argue that any such impairment limits his ability to work.  Instead, Nye focuses solely on his mental limitations and his need for extensive therapy.  As such, Nye has waived any challenge to the ALJ's determination regarding his physical abilities.  *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318-19 (11th Cir. 2012) (explaining that a party waives an argument not raised in his appeal brief

and that a passing reference to an issue is insufficient to preserve the issue). Additionally, to the extent that Nye challenges the district court's findings, his arguments are not relevant because we review only the ALJ's decision under the substantial evidence standard. *See Dyer*, 395 F.3d at 1210.

Here, the ALJ's decision is supported by substantial evidence. Nye first challenges the ALJ's finding that he had begun bowling, which suggested that Nye was more active than he represented during his hearing testimony. Nye is correct that no evidence supports the ALJ's finding that he had begun bowling. On appeal, Nye suggests that the ALJ may have misheard "Boley," the name of his treatment facility, as "bowling," but the record is unclear regarding whether the ALJ misheard any of Nye's hearing testimony. Moreover, it is also unclear whether the ALJ's finding that Nye had begun bowling related only to his alleged physical limitations, which are not at issue in this appeal. Regardless, despite this unsupported finding, substantial evidence supports the ALJ's determination, as a whole, that Nye was not disabled because he had the RFC to perform his past relevant work. *See Dyer*, 395 F.3d at 1210. Contrary to Nye's instant argument, the ALJ's finding that he had begun bowling was not a "prominent" consideration in the ALJ's decision. Instead, the ALJ reviewed the record as a whole in finding that Nye had the RFC to perform a full range of medium work under the SSA. Specifically, the ALJ relied on Nye's medical records, the reports of Dr.

Dinwoodie and Dr. Foster, and Nye's subjective statements, to the extent that those statements were credible.

In assessing the RFC and Nye's credibility, the ALJ acknowledged that Nye's bipolar disorder could reasonably be found to cause at least some of his alleged symptoms, including disturbed sleep, confusion, a reduced ability to tolerate others, fatigue, and a lack of concentration.  The ALJ found, however, that Nye's mental health issues were not sufficiently disabling and that his medical records contradicted his testimony that he experienced only marginal improvements from medication.  These conclusions were supported by sufficient evidence.  *See Winschel*, 631 F.3d at 1178.  Specifically, the notes from Nye's individual and group counseling sessions at Boley indicated that, on several occasions, he reported that he was able to manage his symptoms through medication and other coping skills and that his medications were working. Further, throughout his participation in LEAP, Nye repeatedly assessed his mental health recovery status as a nine on a ten-point scale, with ten indicating a stable condition.  Additionally, Dr. Foster and Dr. Dinwoodie indicated that Nye had only mild or moderate restrictions in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace.  Dr. Foster indicated that Nye's condition had improved with medication, and Dr. Dinwoodie indicated that Nye was capable of understanding and following instructions,

13

sustaining concentration for task completion, and completing a full work week. Additionally, in diagnosing Nye with bipolar disorder, Dr. Hemsath, the treating physician, indicated that Nye's insight and judgment appeared to be adequate. Further, Dr. Hemsath indicated that, although Nye experienced moderate depression and minimal anxiety, he was alert, oriented, and cognitively intact. The foregoing evidence supports the ALJ's finding that Nye had the RFC to perform a full range of medium work as defined by the SSA.

Nye testified that he was unable to maintain employment due to his inability to concentrate and his difficulties in dealing with other people while working at the same time. He also testified that therapy and medicine had not improved his symptoms. However, Nye failed to present any objective medical evidence to confirm the severity of his alleged subjective symptoms or that his inability to concentrate or work with others would preclude his employment. *See Dyer*, 395 F.3d at 1210. Further, Nye's reports during his therapy sessions contradict his hearing testimony that medicine and therapy had been ineffective in treating his symptoms. In sum, the evidence in the record was sufficient to support the ALJ's findings that Nye had the RFC to perform a full range of medium work, including his past relevant work as a restaurant server, and that Nye's testimony concerning the intensity, persistence, and limiting effect of his symptoms, was not entirely credible. *See Winschel.*, 631 F.3d at 1178; *Foote*, 67 F.3d at 1562.

14

Finally, contrary to Nye's argument on appeal, the ALJ did not mischaracterize or discredit Dr. Hemsath's medical opinion.  Nye argues that the ALJ failed to recognize Dr. Hemsath's opinion that Nye's condition required him to attend treatment programs for most of the normal workweek, which indicated that Nye's condition was severe enough to preclude employment.  While Dr. Hemsath may have approved of Nye's participation in LEAP, there was no evidence that Dr. Hemsath prescribed a particular treatment program or that Dr. Hemsath expressed any opinion regarding how many hours per week that Nye should attend therapy.  In fact, as noted by the ALJ, Nye presented no statements from a treating physician indicating that his mental health issues rendered him unable to work.  In light of Nye's burden to establish that he was unable to perform his past relevant work, such a lack of evidence weighed against a finding that Nye was disabled.  *See Lucas*, 918 F.2d at 1571; *Phillips*, 357 F.3d at 1238.  Nye also suggests that his GAF score of 42 showed that he suffered from serious impairments.  However, the Commissioner has noted that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings."  65 Fed. Reg. at 50764-65.  For these reasons, Nye has not shown that the ALJ mischaracterized or discredited Dr. Hemsath's opinion.

For the foregoing reasons, we affirm the district court's order.

**AFFIRMED.**

15