[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 5, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-11040

_____

D. C. Docket No. 02-02757-CV-C-NE

BOBBY DYER,

Plaintiff-Appellee,

versus

JO ANNE B. BARNHART,
Commissioner of Social
Security Administration,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(January 5, 2005)**

Before ANDERSON, CARNES and RONEY, Circuit Judges.

PER CURIAM:

The key issue in this disability benefits case is whether the district court afforded proper deference to the agency decision of the Commissioner of the Social Security Administration ("Commissioner") to deny Social Security disability benefits to claimant Bobby Dyer. After a careful record review, we conclude that the district court erred in finding that the Commissioner's conclusion was not supported by substantial evidence.

Dyer, a fifty-five year old, applied for disability benefits in February 2000, claiming that he had been disabled since August 18, 1999 due to neck pain, Grave's disease, vision problems, and anxiety. The Commissioner denied his claim, and Dyer then requested a hearing before an Administrative Law Judge ("ALJ").

At the administrative hearing, Dyer testified that he had worked as a sales representative from 1984 until 1999. He claimed that he had not worked since becoming disabled due to neck pain, vision problems, and Grave's disease in 1999. Dyer explained that he took Darvocet, aspirin, and Tylenol for his pain. He stated that he suffered from fatigue every day, that he was able to sit, stand, or walk for only fifteen to thirty minutes at a time, and that he needed to lie down everyday for several hours. He further stated that work or physical activity aggravated his pain, and that he felt weak and hurting even sitting in the chair at the hearing.

2

Dyer testified that the pain in his neck was constant, vise-like and that he experienced muscle spasms. He stated that medications did little to improve the pain. He explained that he could perform limited housework, drive short distances, watch television, and read the paper. The ALJ questioned the inconsistency in watching television and reading if he indeed had blurry vision, and Dyer replied that he had to strain to watch television.

The ALJ then questioned a vocational expert ("VE") whether there were employment opportunities for a person with Dyer's age, education, and experience, moderate or less mental restrictions, and pain that was less than moderately severe. The VE stated that although Dyer could not perform his past work, there were other jobs that he could perform.

According to his medical records, Dyer injured his neck on a trampoline in 1975. He was seen by Dr. Frank Haws, neurosurgeon, in 1981 for headaches and neck pain. Dr. Haws diagnosed Dyer with cervical spondylosis. Dyer's CT scan, however, was normal. Dyer did not seek treatment again until 1991, when he was admitted to the emergency room for a work-related injury. At that time, Dyer did not complain of neck pain.

Dyer was treated by Dr. Walter Brumleve, a family practitioner, beginning in 1992. Dyer reported fatigue and anxiety, and was prescribed Valium. A follow-

up visit two months later indicated that Dyer was feeling better. In September 1994, Dyer complained of neck pain, and was prescribed Motrin and Darvocet as needed. He was not treated again for eight months. In mid-1995, Dyer was treated for tachycardia and anxiety. He also complained of muscle spasms. He continued taking Valium. Dyer did not complain of neck pain during these visits.

In February 1996, Dyer was seen by a physician for anxiety but again did not complain of neck pain. In October of that year, however, he visited Dr. Brumleve with complaints of muscle spasms in the back of his neck.

In June 1997, Dyer completed a physical exam form for the Department of Transportation, indicating that he had no history of nervous disorders and that he had 20/20 vision with glasses. Dyer was seen again in June and October of 1997, but he did not indicate any complaints of neck pain in either visit. He did complain, however, of numbness in his hands and feet. In February 1998, Dyer complained of fatigue and neck pain. The doctor noted that Dyer had been working seven days a week, and had diagnosed him with cervical strain. The doctor prescribed Naprosyn and Darvocet.

Dyer was seen again in April and June 1998, at which times he stated that he was doing well, and had no major complaints. By August 1999, Dyer began experiencing weight loss and fatigue, and his primary care physician diagnosed

4

him with a thyroid problem later determined to be Grave's disease.  In November and December, Dyer complained that he experienced back pain after lifting cases at work, and he was prescribed Motrin and Lortab.  He also complained of anxiety, and the doctor prescribed Zoloft or Paxil.

In September 2000, Dyer received another prescription for Darvocet, with no refills.  Dyer was seen for vision problems as part of his disability application in 2000.  The report concluded that Dyer had 20/20 vision and useful binocular vision with glasses, and that there was no sign of thyroid disease.  In his disability "Daily Activities Questionnaire," Dyer indicated that he could mow the lawn, read, iron, drive, watch television, feed and pet his dog, shop, and do some "limited maintenance" household chores.

John Haney, Ph.D., provided a consultative examination for a benefits determination.  Dr. Haney noted that Dyer drove to the appointment, arrived early, and did not appear to be in any distress.  Dr. Haney found Dyer to be alert and oriented to person, time, place, and situation, was depressed, but experienced logical thought, was not suicidal, had an intact memory, and was of average intelligence.  Dr. Haney considered that Dyer had experienced neck pain since 1975, that he both cared for his mother and provided all his own daily living needs.  Dr. Haney concluded that although Dyer's conditions required further assessment,

those conditions moderately impaired his ability to function. Dr. Haney believed, however, that these conditions could improve with proper treatment.

Dr. Douglas Jones, an internist, also examined Dyer for a disability determination. Dr. Jones found that it was difficult to assess Dyer's range of motion because Dyer could not rotate, flex, or extend his neck well. Dr. Jones determined that Dyer was not experiencing any muscle spasms. A determination of Dyer's residual functioning capacity in June 2000 found that Dyer experienced moderate limits in concentration and criticism, but had no other functional limitations.

Dr. Edward Chin, an endocrinologist, treated Dyer for his thyroid disease in October 2000. Dr. Chin noted that Dyer was progressing well, finding that Dyer had full range of motion in his neck, and that he continued to take Darvocet for the pain as needed.

Based on this medical information and the testimony at the hearing, the ALJ determined that the Commissioner properly denied benefits. According to the ALJ, Dyer's combination of impairments, although severe, did not meet any of the listings for disability. Specifically, the ALJ found that, based on the evidence presented at the hearing, Dyer had no vision issues, his anxiety only provided mild restrictions in his daily living, there were no clinical findings to support disability

6

based on cervical spondylosis, and Dyer's Grave's disease resulted in no other physical degenerations.

Addressing Dyer's subjective complaints of pain, the ALJ found that Dyer had a medical condition, but that the record did not confirm the severity of that condition. The ALJ also determined that there was no medical evidence to support Dyer's complaints of pain, fatigue, or anxiety. In addition, the ALJ found Dyer's subjective complaints to be inconsistent with Dyer's activities of daily living, frequency of symptoms, and the type and dosage of medications. The ALJ further noted that Dyer had been able to work for many years with the neck pain, and his symptoms were typical of thyroid disease. Accordingly, the ALJ determined that the pain was less than moderately severe, that Dyer's vision was fine, and that he could perform light work.

Dyer filed a complaint in the district court, asserting that the ALJ erred in assessing his subjective complaints of pain and in failing to adequately explain why the ALJ discredited his testimony. The district court reversed the ALJ's decision, finding that the ALJ applied an incorrect pain standard. The district court found that the medical record supported Dyer's complaints, and that the ALJ failed to consider the medications prescribed, as Darvocet and Lortab were used for moderately severe pain.

The Commissioner argues that the ALJ applied the proper legal standard for subjective complaints of pain, and that the ALJ's decision is supported by substantial evidence. The Commissioner asserts that the ALJ correctly determined that there was no objective evidence to support Dyer's complaints of vision problems, anxiety, neck pain, and disabling symptoms that resulted from his hypothyroidism. The Commissioner also contends that there was no factual or legal basis for the district court to reverse this determination, and the district court focused solely on the ALJ's alleged failure to consider Dyer's medications, which could not serve as the basis to reverse the Commissioner's decision. The Commissioner further asserts that the ALJ adequately explained his reasons for discrediting Dyer's subjective complaints.

Both this Court and the district court must review the agency's decision and determine whether its conclusion, as a whole, was supported by substantial evidence in the record. *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995) (citing 42 U.S.C. § 405(g)). Substantial evidence is something "more than a mere scintilla, but less than a preponderance." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (internal quotation and citation omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8

8

(11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" 357 F.3d at 1240 n.8 (internal quotation and citation omitted).

The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven that he is disabled. *See* 20 C.F.R. § 404.1520. In *Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991), this Court articulated the "pain standard,"which applies when a disability claimant attempts to establish a disability through his own testimony of pain or other subjective symptoms. 921 F.2d at 1223. The pain standard requires

> (1) evidence of an underlying medical condition and
> either (2) objective medical evidence that confirms the
> severity of the alleged pain arising from that condition or
> (3) that the objectively determined medical condition is
> of such a severity that it can be reasonably expected to
> give rise to the alleged pain.

921 F.2d at 1223 (internal citation omitted). If a claimant testifies as to his subjective complaints of disabling pain and other symptoms, as Dyer did here, the ALJ must clearly "articulate explicit and adequate reasons" for discrediting the claimant's allegations of completely disabling symptoms. *Foote*, 67 F.3d at 1561-62. "Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court." 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983)). The

9

credibility determination does not need to cite "'particular phrases or formulations'" but it cannot merely be a broad rejection which is "'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Foote*, 67 F.3d at 1561 (quoting *Jamison v. Bowen*, 814 F.2d 585, 588-90 (11th Cir. 1987)).

Contrary to the district court's decision, the ALJ properly applied the *Holt* pain standard, and his determination is supported by substantial evidence. Specifically, the ALJ found that although Dyer indeed met the first prong of the *Holt* pain standard test which requires evidence of the underlying medical conditions, Dyer failed to set forth the requisite objective medical evidence that confirmed the severity of the alleged pain arising from the alleged neck pain, as well as Dyer's other alleged conditions, or that the objectively determined medical conditions are of such a severity that they can be reasonably expected to give rise to the alleged pain. In reaching this conclusion, the ALJ considered Dyer's subjective complaints of pain, including the medications taken for pain, and adequately explained his reasons for discrediting those complaints.

The ALJ systematically articulated his reasons for rejecting Dyer's subjective complaints of pain. First, Dyer claimed that he had experienced neck pain since 1975. The ALJ discredited this testimony by explaining that this pain

10

had not require routine or consistent treatment, and he often went for months or years between complaining of this pain to his physicians:

> Although the claimant was diagnosed with cervical spondylosis in 1981, he responded well at that time to a combination of traction and physical therapy. The claimant reported in 1981 that he had neck pain on an[d] off for several years, the medical record since then indicates that he has only rarely reported neck and/or shoulder pain.

Next, the ALJ indeed noted that Dyer was given aspirin, Motrin, Tylenol, and Darvocet to be used as needed for his pain. According to the record, all of these medications are used for the treatment of mild to moderate pain. Moreover, the ALJ specifically referenced Dyer being prescribed Darvocet in two different locations in his detailed order, explaining that Dyer's taking of Darvocet and complaints of pain were inconsistent with the record evidence that "claimant continued to perform substantial gainful activity at the medium exertional level until August 1999 despite his cervical spondylosis and there is no evidence that the medical condition had worsened since then."

Although the ALJ did not expressly reference Dyer's taking of one pain medicine, Lortab, this is inconsequential to the ALJ's decision because the record reveals that Dyer was prescribed Lortab, which is used to treat severe pain, on only one occasion, in connection with a back injury from lifting boxes at work. This

11

injury was unrelated to Dyer's long-term and subjective complaints of neck pain in connection with his application for disability. In all events, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision, as was *not* the case here, is not a broad rejection which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Foote*, 67 F.3d at 1561 (internal quotation omitted). Our standard of review is, as it is for the district court, whether the ALJ's conclusion as a whole was supported by substantial evidence in the record. *See Foote*, 67 F.3d at 1558.

In addition, Dyer had been receiving treatment for Graves's disease and his doctors noted his improvement with this treatment. Dyer also had been seen by a physician for his visual complaints, but the reports showed that his vision was 20/20 with glasses and there was no evidence of eye degeneration. Finally, the ALJ articulated that although Dyer was treated for anxiety, he reported feeling better after being treated with medications. For example, the ALJ noted that a June 2000 consultative psychological examination performed by Dr. Haney revealed that Dyer "appeared in no obvious physical or emotional distress. The only medication he reported taking was Valium, as needed. He was fully oriented."

In sum, the ALJ considered Dyer's activities of daily living, the frequency of

12

his symptoms, and the types and dosages of his medications, and concluded that Dyer's subjective complaints were inconsistent with his testimony and the medical record. The ALJ thus adequately explained his reasons and it was reversible error for the district court to hold otherwise. *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) (noting that the "ALJ made a reasonable decision to reject [the claimant's] subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so").

In reversing the ALJ, the district court improperly reweighed the evidence and failed to give substantial deference to the Commissioner's decision. *See Wilson*, 284 F.3d at 1221 (holding that district court erred in reversing ALJ's denial of disability benefits because substantial evidence supporting ALJ's denial existed). Because there was substantial evidence to support the Commissioner's denial of disability benefits to Dyer, we reverse and remand to the district court with instructions to enter judgment consistent with the ALJ's findings.

**REVERSED, AND REMANDED.**