[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11567
Non-Argument Calendar
_____

D.C. Docket No. 8:10-cv-02886-TGW

ROBERT THOMAS,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 19, 2012)

Before CARNES, BARKETT and MARTIN, Circuit Judges.

PER CURIAM:

Robert Thomas appeals an order[1] affirming the decision by the Administrative Law Judge ("ALJ") to deny a period of disability, disability insurance benefits, and supplemental insurance income under Titles II and XVI of the Social Security Act.  On appeal, Thomas argues that the ALJ erred by finding that he had a "limited education."  Thomas also argues that the ALJ erred by determining that "there were a significant number of jobs which existed in the national economy which the appellant could perform."

When an ALJ denies benefits and the Appeals Council denies review, we review the ALJ's decision as if it is the Commissioner's final decision.  Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).  We review to "determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2001) (quotation marks omitted).  "We may not decide facts anew [or] reweigh the evidence" and we must defer to the ALJs decision if it "is supported by substantial evidence . . . even if the proof preponderates against it."  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks omitted).

---

[1]  The parties consented to the jurisdiction of the Magistrate Judge.  See 28 U.S.C. § 636(c).

Eligibility for disability insurance benefits and supplemental security income requires that the claimant is under a disability. 42 U.S.C. §§ 423(a)(1), 1382(a)(1)-(2). The ALJ must complete a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. § 416.920. This evaluation looks to whether the claimant: (1) is engaged in substantial gainful activity; (2) has "a severe medically determinable physical or mental impairment," or combination of impairments, "that meets the duration requirement"; (3) has an impairment that meets or equals a statutory listing and meets the duration requirements; (4) can perform his past relevant work in light of his residual functional capacity; and (5) can adjust to other work given his residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

## I.

Thomas first argues that the ALJ erred by determining that he had a "limited education." A claimant's education is one of the elements that the ALJ must consider when determining whether a claimant can adjust to other work under step five of the disability determination process. 20 C.F.R. § 404.1520(a)(4)(v). In evaluating a claimant's education, formal schooling or training is the primary factor, but the ALJ may also consider past work experience and responsibilities, daily activities, and hobbies. 20 C.F.R. §§ 404.1564(a), 416.964(a). "The term education also includes how well [the claimant] is able to communicate in

3

English." Id. at §§ 404.1564(b), 416.964(b). A claimant who is determined to have a "limited education" has "ability in reasoning, arithmetic, and language skills, but not enough to . . . do most of the more complex job duties needed in semi-skilled or skilled jobs." Id. at §§ 404.1564(b)(3), 416.964(a)(3).

Thomas argues that the ALJ erred in her analysis of his educational level in several ways. First, Thomas says that the ALJ failed to "address[] his testimony in her decision." However, the ALJ specifically mentioned portions of Thomas's testimony in her opinion. For example, the ALJ's opinion explains how Thomas testified that he "participated in special education classes in grade school," "quit school in the ninth grade," and "was unable to understand the questionnaires that were sent to him from the Social Security Administration." While there were other parts of Thomas's testimony that the ALJ did not specifically refer to, such as Thomas's failing grades in school, the ALJ is not required to discuss every piece of evidence in her decision. See Dyer, 395 F.3d at 1211. The ALJ must only discuss enough evidence to demonstrate that she considered the claimant's condition as a whole. See id. We conclude that the ALJ's opinion does not demonstrate that she considered Thomas's condition as a whole.

Second, Thomas argues that the ALJ erred by relying on Thomas's numerical grade level. "[I]f there is no other evidence to contradict it," an ALJ can use a claimant's "numerical grade level to determine [his] educational abilities."

4

20 C.F.R. §§ 404.1564(b), 416.964(b).  Thomas's ninth grade level put him in the "limited education" category, which generally includes individuals with "a 7th grade through the 11th grade level of formal education."  Id. §§ 404.1564(b)(3), 416.964(b)(3).

Thomas asserts that his testimony contradicted his numerical grade level and therefore, it was improper for the ALJ to rely on that level to presume that he had a "limited education."  However, there is substantial evidence to support the ALJ's determination that Thomas had a "limited education" independent of his numerical grade level.  For example, Dr. Mussenden, who observed and examined Thomas, concluded that he "had normal and appropriate speech; displayed moderate judgment and common sense; . . . . had a good recall for remote and recent events; . . . had a good fund of general knowledge and information; . . . had good mathematical skills; . . . and could interpret abstract concepts."  The ALJ's decision was also supported by Thomas's past work experience.  Thomas worked as a "self-employed tree surgeon," a semi-skilled position.  This experience suggests that Thomas must have at least a "limited education" because even individuals with "limited education" generally cannot "do most of the more complex job duties needed in semi-skilled jobs."  See 20 C.F.R. §§ 404.1564(b)(3), 416.964(b)(3).

Third, Thomas argues that the ALJ erred by "not stat[ing] whether she found [his] testimony credible" and by not fulfilling her "obligation to develop the record further on the issue of the Appellant's actual educational level." These arguments were not raised before the magistrate judge. Thus, they have been waived. See Crawford v. Comm'r of Soc. Sec, 363 F.3d 1155, 1161 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).

We therefore conclude that substantial evidence supported the ALJ's finding that Thomas had a "limited education."

## II.

Thomas' second argument is that the ALJ erred by "finding that there were a significant number of jobs which existed in the national economy which [he] could perform." At the fifth step of the disability determination process the burden is on the Commissioner to show that, based on the claimant's residual functional capacity, age, education, and work experience, there is other work available in significant numbers in the national economy that the claimant can perform. Doughty, 245 F.3d at 1278 & n.2. If the Commissioner shows that such jobs exist, "the claimant must then prove that he is unable to perform [those] jobs" in order to be considered disabled. Id. at 1278 n.2. The ALJ may use a vocational expert to determine whether there are jobs that the claimant can perform and that are

available in significant numbers in the economy.  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004).

The ALJ in this case relied on a vocational expert.  The vocational expert testified that several jobs are available in significant numbers for individuals with the "same age, education, past . . . relevant work," and physical restrictions as Thomas.  Specifically, the vocational expert listed new account clerk, rental clerk, cashier, and parking attendant as possibilities.  Thomas argues that, contrary to the ALJ's findings, he is unable to perform any of these jobs.

First, with respect to the new account clerk and rental clerk positions, Thomas argues that "[t]he ALJ should have definitely excluded" these jobs because the vocational expert testified that they require a high school diploma, which he does not have.  Thomas is correct that these two jobs are not consistent with his educational level.  However, as the magistrate judge suggested, it is not clear that the ALJ actually held that Thomas could perform these jobs.  Further, this is, at most, a harmless error because, as discussed below, there was substantial evidence to support a finding that Thomas could work as a cashier and parking lot attendant, which are jobs available in significant numbers in the national economy.

Second, Thomas "takes issue with the District Court's finding that the vocational expert testified that there were 115,000 cashier jobs in the United States and 1,300 in the State of Florida for persons with a limited education and who

7

needed a sit/stand option." (emphasis added).  This argument fails.  The vocational

expert explained that those figures represented cashier jobs "with a sit/stand

option" that would accommodate Thomas's need to "alternate positions at will."

While the vocational expert did not explicitly say that those same cashier jobs

would also accommodate someone with a limited education, her later testimony

clarified that they would.  The vocational expert explained that when "looking at

sit/stand cashiers that was [sic] basically working at the airport or a parking

garage."  When asked about which jobs required a high school diploma, the

vocational expert explained that the same category of cashier jobs, airport or

parking garage cashiers, "normally would not need a high school diploma."

Therefore, substantial evidence supported a determination by the ALJ that there

were 115,000 cashier jobs in the United States and 1,300 cashier jobs in Florida

that Thomas would be able to perform given both his physical and educational

limits.[2]

---

[2] Thomas also argues that, based on his testimony, he did not have the educational ability and "reasoning level" required for the cashier position.  As explained, substantial evidence supported the ALJ's finding that Thomas had a "limited education."  The vocational expert acknowledged that Thomas had "a limited education" and explained that someone with his education level would be able to work as a cashier.  Further, Thomas had previously worked in positions that had at least the same specific vocational preparation level as these types of cashier jobs, level 2.  The vocational expert testified that airport or parking garage cashiers would likely require "basic math skills in order to give change," but there is no reason to doubt that Thomas has those skills because Dr. Mussenden determined that Thomas has "good mathematical skills" and Thomas has experience handling money from his time working as a self-employed tree surgeon.

Third, Thomas argues that he is unable to work as a parking attendant because "it is obvious from reading the description of the job in the Dictionary of Occupational Titles, that there are parts of the job that are going to require standing and walking as needed by the employer and not at the option of the employee." The relevant section of the Dictionary of Occupational Titles, does not specifically discuss whether a parking attendant may sit and stand as he pleases. See Department of Labor, Dictionary of Occupational Titles § 915.473 – 010 (rev. 4th ed. 1991). An ALJ can rely on a vocational expert to supplement the information in the Dictionary of Occupational Titles and where the two conflict the vocational expert's testimony "trumps." See Jones, 190 F.3d at 1229 – 30. Here, the vocational expert explained that an individual who "every 20, 30 minutes or so" must be able to "sit/stand at will" would be able to work as a parking lot attendant. Therefore, there was substantial evidence supporting the ALJ's conclusion that Thomas could work as a parking attendant.

Finally, Thomas argues that the testimony was too "inaudible or at best vague" to support the ALJ's determination. This argument was likely waived. See e.g., Crawford, 363 F.3d at 1161 (refusing to consider an argument that the claimant failed to raise in the district court). Even if it was not waived, it lacks merit because, as illustrated above, there was substantial evidence, clearly presented by the vocational expert, to support the ALJ's conclusion.

9

III.

After a careful and thorough review of the administrative record and the parties' briefs, we affirm the ALJ's decision.

**AFFIRMED.**