[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12357
Non-Argument Calendar
_____

D.C. Docket No. 4:14-cv-01567-CLS

ANNETTE WHITTON,

Plaintiff–Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant–Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(February 12, 2016)

Before HULL, MARCUS, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Appellant Annette Whitton appeals the district court's order affirming the Administrative Law Judge's ("ALJ") denial of her application for disability insurance benefits. On appeal, she challenges the weight the ALJ accorded to the medical opinion evidence, specifically arguing that the ALJ erred by assigning no weight to the opinion of her treating psychiatrist and improperly substituted his own opinion for the opinion of her consulting psychologist. After careful review, we affirm.

## I. BACKGROUND

In May 2011, Whitton filed an application for disability insurance benefits with the Social Security Administration. Alleging a disability onset date of January 1, 2009, Whitton represented that she was unable to work because of migraines, high blood pressure, chronic back and knee pain, depression, and stress-induced boils.

The Commissioner of Social Security ("the Commissioner") denied Whitton's application for benefits. At a subsequent hearing before the ALJ in March 2013, the ALJ heard testimony from Whitton, Whitton's husband, and a vocational expert.

Whitton testified that she had not worked since October 2010, and amended her disability onset date to October 27, 2010. While she left her previous job because the business closed, she had planned to leave because of knee and back

pain.  Her mother also passed away in October 2010, and she was having trouble

dealing with the loss.  She received treatment for anxiety and depression at a

mental health facility, but the medications she received did not help her.

Whitton stated that she also had trouble sleeping and eating, she could not

concentrate to watch a two-hour movie, she had little energy, and sometimes she

had trouble bathing and getting dressed without assistance.  She suffered from

panic attacks approximately three times per week.  Because her husband was in an

accident in 2008, Whitton had to cook for him, help him get dressed, give him

shots, and make sure he took his medication.  She also stated that she drove herself

to the hearing, which was a 45-minute drive from her home, without any problems.

Moreover, she handled most of the family's finances.

Following the hearing, the ALJ issued a decision, concluding that Whitton

was not disabled for purposes of eligibility for disability insurance benefits.  Upon

review of the evidence, the ALJ found that Whitton suffered from lumbago,

hypertension, depression, and anxiety, but he determined that these impairments

did not meet or equal any of the listed impairments in the Social Security

regulations.

The ALJ further concluded that Whitton could perform light work, but that

she needed to avoid heights, dangerous or moving equipment, as well as ropes,

ladders, and scaffolds.  Her work should also be limited to simple tasks, interaction

with co-workers should be casual, and she should not have any exposure to the general public. The ALJ also reviewed the medical evidence, including the opinions of Whitton's treating psychiatrist, Dr. Richard Grant, who opined that Whitton was severely limited in all areas of functioning, as well as the opinion of her consulting psychologist, Dr. David Wilson, who diagnosed Whitton with borderline intellectual functioning. The ALJ gave no weight to these opinions because Whitton did not see either doctor until after her date last insured, and because the medical opinions were inconsistent with the record as a whole, including the doctors' own treatment notes.

Based on the finding that Whitton could perform light work, in addition to the vocational expert's opinion that a significant number of jobs accommodating Whitton's limitations existed in the national economy, the ALJ concluded that Whitton was not disabled. The Appeals Council denied Whitton's request for review.

In August 2014, Whitton filed a complaint in the district court challenging the denial of disability insurance benefits. She argued, among other things, that the ALJ did not accord proper weight to the opinions of Drs. Grant and Wilson. The district court affirmed the Commissioner's decision denying benefits, concluding in relevant part that the ALJ's evaluation of the medical evidence was in

accordance with the relevant legal standards and was supported by substantial evidence.  This appeal followed.

## II.  DISCUSSION

### A.    Standard of Review

We review the ALJ's decision for substantial evidence, but its application of legal principles *de novo*.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotations omitted).  We may not reweigh the evidence and decide the facts anew, and must defer to the ALJ's decision if it is supported by substantial evidence.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

### B.    Process for Determining Eligibility for Disability Insurance Benefits

To be eligible for disability insurance benefits, a claimant must establish that she was under disability on or before the last date for which she was insured.  42 U.S.C. § 423(a)(1)(A), (c)(1), *Moore*, 405 F.3d at 1211.  Because Whitton's last insured date was December 31, 2010, she must show that she was disabled on or before that date.  *See Moore*, 405 F.3d at 1211.

Under the five-step sequential evaluation process used to determine if a claimant has demonstrated a disability, the ALJ considers:  (1) whether the

5

claimant is engaging in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether the claimant's impairments meet or equal a listed impairment; (4) if not, whether the claimant is able to do her past relevant work; and (5) if not, whether the claimant, in light of her age, education, and work experience, can perform other work in the national economy.  20 C.F.R. § 404.1520(a)(4); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

### C.   Weight ALJ Assigned to Medical Opinion Evidence

To determine whether a disability exists, the ALJ considers the medical opinions in the record, in addition to the other relevant evidence in the record.  20 C.F.R. § 404.1527(b).  The ALJ must give the opinion of a treating physician "substantial or considerable weight" unless there is good cause not to do so. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quotations omitted); 20 C.F.R. § 404.1527(c)(2) (stating that the opinion of a treating physician will be given controlling weight if it is supported by medically acceptable and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record).

We have concluded that good cause exists for affording less weight to a treating physician's opinion when the:  "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating

physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1240–41.  Moreover, the opinion of a treating physician may be entitled to less weight when the physician's assessment conflicts with a claimant's own reported daily activities.  *See id.*  If the ALJ chooses to assign less weight to a treating physician's opinion, he must clearly articulate his reasons for doing so.  *Id.*

### 1.    Opinion of Whitton's Treating Psychiatrist

Whitton argues that the ALJ did not give proper weight to the opinion of her treating psychiatrist, Dr. Grant, and instead substituted his own opinion for that of Dr. Grant.

Whitton's case record includes a November 2012 mental health source statement completed by Dr. Grant, in which he opined that Whitton had marked and extreme limitations in all areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation.  In a disability questionnaire also dated November 2012, Dr. Grant concluded that Whitton was disabled, that the disability began before March 2012, and that the disability was based on the following impairments: a diminished mental capacity, an inability to cope with daily stressors, and severe recurrent depression.  Dr. Grant also stated that Whitton exhibited "agoraphobic behaviors" and her mental health issues were of "such intensity" that it made it difficult for her to cope with the activities of

7

daily life.  The ALJ gave no weight to Dr. Grant's opinion because it was inconsistent with the other evidence in the record, including Dr. Grant's treatment notes, and because the report and questionnaire were dated long after the date Whitton was last insured.

We conclude that substantial evidence supports the ALJ's articulation of good cause for giving no weight to Dr. Grant's opinion that Whitton was severely limited in all areas of functioning.  First, Dr. Grant did not treat Whitton during the relevant time period, as Whitton did not begin receiving treatment from him until March 2012, which was more than one year after her date last insured—December 31, 2010.  *See* 42 U.S.C. § 423(a)(1)(A), (c)(1); *Moore*, 405 F.3d at 1211 (providing that a claimant must demonstrate disability on or before the date last insured to demonstrate eligibility for disability insurance benefits).  Although Dr. Grant stated that Whitton had suffered from moderate depression for 15 years and listed her disability onset date as before March 22, 2012, he never evaluated the severity of her conditions during the relevant time period.

Even if Dr. Grant's opinion applied to the relevant time period, good cause still existed for assigning no weight to his opinion.  In particular, Dr. Grant's own treatment notes contradicted his opinion that Whitton was severely depressed and had marked or extreme limitations in all areas of functioning.  *See Phillips*, 357 F.3d at 1241.  His treatment notes from June 2012 show that Whitton's insight and

8

judgment were fair, her thought process was logical, her thought content was within the normal limits, and she exhibited appropriate behavior. Likewise, in his notes from December 2012—only one month after opining that Whitton had marked or extreme limitations in all functioning areas—Dr. Grant indicated that Whitton's sleep patterns, attention and concentration, appetite, and energy had all improved.

The ALJ's decision to give no weight to Dr. Grant's opinion is also supported by other evidence in the record. Although the record contains limited evidence related to Whitton's treatment from before the date she was last insured, the evidence that is in the record indicates that she received treatment at Quality of Life Health Services, Inc. in October 2010, and reported no issues with memory, interaction, or concentration. In a subsequent visit in November 2010, Whitton presented with normal affect, insight, judgment, attention span, and concentration, and reported no issues with memory.

Additionally, Dr. Grant's opinion conflicted with Whitton's own description of her daily activities. *See Phillips*, 357 F.3d at 1241. Although Dr. Grant opined that the severity of Whitton's mental health issues severely limited her daily life activities, Whitton stated on her application for disability benefits that she cooks breakfast, washes dishes, makes the bed, mops the floor, and gives her husband shots and takes him to doctor's appointments. She also testified that she drove to

the disability hearing, which was a 45-minute drive from her home, and handled most of the family's finances.

We therefore reject Whitton's contentions on appeal that the ALJ substituted his own opinion for that of Dr. Grant, as the record shows that the ALJ considered all of the medical evidence, clearly articulated reasons for rejecting Dr. Grant's opinion, and those reasons are supported by substantial evidence. *See Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (stating that "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion"). Based on the inconsistencies between Dr. Grant's opinion and the record, including Dr. Grant's own treatment notes, the ALJ had good cause for assigning no weight to the opinion.

### 2.     Opinion of Whitton's Consulting Psychologist

Whitton asserts that the ALJ improperly substituted his own opinion for the opinion of Whitton's consulting psychologist, Dr. Wilson.

The record includes a November 2012 psychological evaluation from Dr. Wilson, in which he diagnosed Whitton with major depressive disorder, recurrent panic disorder, and borderline intellectual functioning. Moreover, in a January 2013 mental health source statement, Dr. Wilson opined that Whitton had marked and extreme limitations in almost all areas of functioning. However, he further opined that she was only mildly or moderately limited in (1) the ability to

10

understand, remember, and carry out short, simple instructions, and (2) the ability to ask simple questions and request assistance. The ALJ gave no weight to Dr. Wilson's opinion, concluding that his examination and opinion occurred after Whitton's date last insured. Additionally, the ALJ noted that Dr. Wilson's opinion was inconsistent with his own examination of Whitton and was not supported by other evidence in the record.

Similar to the ALJ's rejection of Dr. Grant's opinion, we conclude that the ALJ did not substitute his own opinion for Dr. Wilson's because substantial evidence supports the ALJ's articulation of good cause for assigning no weight to that opinion. As the ALJ correctly stated, Dr. Wilson's psychological evaluation and mental health source statement, which were dated November 2012 and January 2013, respectively, were rendered after Whitton's date last insured, and did not address the severity of Whitton's conditions during the relevant time period. 42 U.S.C. § 423(a)(1)(A), (c)(1); *Moore*, 405 F.3d at 1211. More importantly, Dr. Wilson's opinion was inconsistent with his own examination of Whitton. Following his examination, Dr. Wilson diagnosed Whitton with borderline intellectual functioning and ultimately concluded that Whitton had significant medical problems that would cause difficulty in a work environment. Yet, he stated in the psychological evaluation that Whitton reported that she had done "excellent" in school, but had dropped out in the 10th grade because she got

married.  Moreover, despite not obtaining a GED, Whitton received a degree in Office Business Education from the USA Training Academy in Hoover and "graduated at the top of the class."  As if that were not enough, Whitton was an office manager for approximately eight years, six of which were at a security firm.

Likewise, in the January 2013 mental health source statement, he opined that Whitton was markedly limited in the ability to understand and remember detailed instructions and extremely limited in almost all areas of sustained concentration and persistence.  However, in his evaluation of Whitton, he concluded that she had good mental control, attention, and concentration, as well as an adequate short term memory.  Because Dr. Wilson's examination of Whitton was clearly at odds with his ultimate findings and conclusions, substantial evidence supported the ALJ's decision to give it no weight.  *See Crawford*, 363 F.3d at 1159 (concluding that substantial evidence supported the ALJ's rejection of treating physician's medical opinion in part because it was inconsistent with physician's own treatment notes).

## III.  CONCLUSION

For all of the above reasons, we affirm the district court's order affirming the Commissioner's denial of Whitton's application for disability insurance benefits.

**AFFIRMED.**

12