[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13830
Non-Argument Calendar
_____

D.C. Docket No. 4:16-cv-00378-HLM

THOMAS GRANT JOHNSON,

Plaintiff–Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant–Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 31, 2019)

Before JILL PRYOR, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Thomas Johnson appeals the district court's decision affirming the Commissioner of Social Security's denial of his application for disability insurance benefits. Johnson requests that this Court reverse the Commissioner's decision because the ALJ failed to identify or resolve conflicts between the testimony of a vocational expert concerning the mental and physical requirements to perform the jobs of dry cleaner, kitchen helper, and linen-room attendant, and the corresponding mental and physical requirements for these positions in the Dictionary of Occupational Titles. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1363 (11th Cir. 2018).

During Johnson's hearing, the VE suggested that the jobs of dry cleaner and kitchen helper require only occasional stooping. The Dictionary of Occupational Titles indicates that they instead require *frequent* stooping. The Commissioner grants that the ALJ erred in failing to identify or resolve this conflict, but maintains that the error was harmless because Johnson could still find work in the national economy as a linen-room attendant. Johnson disagrees, arguing that the ALJ also failed to identify or resolve a discrepancy between the VE's testimony and the DOT concerning the reasoning level required to work as a linen-room attendant. We conclude that Johnson has the better of the argument. The distinction between the VE's testimony and the description in the DOT amounted to an "apparent conflict" under the SSA's relevant Policy Interpretation Ruling, *see* SSR 00-4P,

2

2000 WL 1898704 (Dec. 4, 2000), as we recently construed the Ruling in

*Washington.* We therefore reverse the district court's decision with instructions to

remand Johnson's application to the Commissioner for further development of the

record.[1]

## I

An SSA decision to deny disability benefits must be supported by

substantial evidence in the record. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th

Cir. 2005); 42 U.S.C. § 405(g). Substantial evidence means "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (citations

omitted). Reviewing an SSA decision, we will not decide the facts anew, make

credibility determinations, or reweigh the evidence. *Winschel v. Comm'r of Soc.*

*Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). We will review *de novo* the legal

principles on which the ALJ relied. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264,

1266 (11th Cir. 2015).

---

[1] Johnson also contends that the ALJ's residual functional-capacity-assessment did not fully account for physical limitations relating to his degenerative disk disease and recurring seizures. We believe that substantial evidence supported the ALJ's conclusion that Johnson retained the residual functional capacity to work as a linen-room attendant. The Commissioner need not revisit this issue on remand.

3

## II

An applicant for disability benefits must prove that he is disabled.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citation omitted).[2]  To determine whether the applicant is disabled, the ALJ makes a five-step evaluation, asking whether the claimant: (1) is currently engaged in substantial gainful activity; (2) has "a severe impairment or combination of impairments"; (3) has an impairment that meets or equals the severity of the impairments included in the Listing of Impairments[3]; (4) can perform past relevant work in light of his residual functional-capacity-assessment; and (5) can make an adjustment to other work in light of his residual functional capacity, age, education, and work experience. *Winschel*, 631 F.3d at 1178; 20 C.F.R. § 404.1520(a)(4)(i)–(v).

If the applicant successfully demonstrates an impairment preventing him from performing his past work at step four, then the evaluation moves to step five and the burden shifts to the Commissioner to show the existence of other jobs in the national economy that the applicant can perform.  *Hale v. Bowen*, 831 F.2d

---

[2] "The term 'disability' means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A)

[3] "The Listing of Impairments describes, for each major body system, impairments considered severe enough to prevent an individual from doing any gainful activity."  Social Security Administration, *Disability Evaluation Under Social Security: Part III – Listing of Impairments*, https://www.ssa.gov/disability/professionals/bluebook/listing-impairments.htm.

1007, 1011 (11th Cir. 1987). If the Commissioner can identify such a role, the burden shifts back to the claimant to show that he is unable to perform the jobs suggested. *Id.* (citations omitted). "[T]he critical inquiry at step five is whether jobs exist in the national economy in significant numbers that the claimant could perform in spite of his impairments . . . the ALJ can consider both jobs data drawn from the DOT as well as from the testimony of the VE in making this determination." *Washington*, 906 F.3d at 1360.

But what if there are inconsistencies between the DOT and the testimony of the VE? As we noted in *Washington*, this question was "for years, a source of contention." *Id.* The SSA responded in 2000 with Social Security Ruling 00-4P. The Ruling doesn't definitively settle the question, but it does detail the ALJ's obligations when questioning a VE witness. Whether the ALJ satisfied those obligations is the central question here.

Ruling 00-4P states that "[w]hen a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT." The ALJ did so here. The VE responded that his testimony was consistent with the DOT. The VE was wrong, and Johnson and the Commissioner agree (1) that the VE erred in claiming that the ALJ's hypothetical employee (based on Johnson's residual functional capacity) would be

5

able to meet the physical requirements of a dry cleaner or kitchen helper, and (2) that under Ruling 00-4P, the ALJ should have identified and "resolve[d] this conflict before relying on the VE . . . evidence to support a determination or decision that [Johnson] is or is not disabled."

Johnson and the Commissioner part ways, however, over what to make of the VE's testimony that the ALJ's hypothetical employee (again, effectively Johnson) could also obtain employment as a linen-room attendant. The Commissioner argues that the record supports the ALJ's determination that Johnson was physically and mentally capable of performing this job. Johnson maintains, just as with the kitchen helper and drycleaner roles, that there is a conflict between the VE's testimony and the job description in the DOT—albeit here with regard to the reasoning level required by the role rather than any physical limitations. Johnson contends that because of this conflict the ALJ had what we described in *Washington* as "an affirmative obligation" to identify and resolve it. 906 F.3d at 1362.

In *Washington*, we understood the Ruling 00-4P's reference to an "apparent conflict" to mean a conflict that is "seeming real or true, but not necessarily so." *Id.* at 1366 (quotations omitted). We thus interpreted the Ruling as focusing less on the outcome of the ALJ's investigation into the conflict—*i.e.*, whether or not the ALJ concludes there is an actual conflict between the VE's testimony and the

6

DOT—than on ensuring that the ALJ investigates whenever the potential for a conflict clears this "apparent" threshold. Comparing the VE's testimony here with the DOT, we agree with Johnson that this threshold was cleared.

The DOT describes the position of linen-room attendant as requiring a reasoning level of three. DOT 222.387-030 (4th ed. 1991). An applicant with a reasoning level of three can "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.* at App. C. An applicant with a reasoning level of one, by contrast, can "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.*

At Johnson's hearing, the ALJ described a hypothetical employee (yes, still based on Johnson) to the VE that is "limited to *simple, routine tasks*, not at a production rate pace and no contact with the public." (emphasis added). The ALJ's limitation on the hypothetical employee's reasoning ability was based on evidence throughout the record indicating that Johnson's mental capacities were substantially impaired. We believe that there is at least "apparently" a conflict between an employee limited to "simple, routine tasks" and one able to "deal with problems involving several concrete variables."

7

As a result, the ALJ had "an affirmative obligation" to investigate and resolve this apparent conflict. The ALJ didn't. Given the Commissioner's concession that the ALJ should not have relied on the dry-cleaner and kitchen-helper jobs either, we reverse the district court's affirmance with instructions to remand Johnson's application to the Commissioner for further development of the record.

**REVERSED AND REMANDED.**