[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-10344

Non-Argument Calendar

_____

JILL CAPOBIANCO,

Plaintiff-Appellant,

*versus*

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:22-cv-14405-RMM

_____

Before ROSENBAUM, JILL PRYOR, and ABUDU, Circuit Judges.

PER CURIAM:

Jill Capobianco appeals from the district court's order affirming the decision of the Commissioner of the Social Security Administration denying her applications for disability insurance benefits and supplemental security income. After careful review, we affirm.

**I.**

Capobianco applied for disability insurance benefits and supplemental security income, alleging that she was disabled due to several physical and mental impairments, including chronic migraines.[1] An administrative law judge ("ALJ") held multiple evidentiary hearings on Capobianco's applications.[2] The record before the ALJ included medical records and testimony from Capobianco about her limitations.

The medical records reflected that neurologist Dr. Kathie Kowalczyk treated Capobianco beginning in December 2016. After treating Capobianco for four months, Kowalczyk completed a questionnaire about Capobianco's migraine headaches. She

---

[1] Because we write only for the parties, who are already familiar with the facts and proceedings in the case, we include only what is necessary to explain our decision.

[2] In agency proceedings, Capobianco at times was represented by counsel and at times proceeded *pro se.* In the district court, she was represented by counsel but is proceeding *pro se* in this appeal.

reported that Capobianco experienced chronic daily headaches, which were severe enough to cause significant interference with activities throughout the day. The questionnaire asked about the frequency of headaches. Kowalczyk checked two boxes, indicating that Capobianco had headaches "1 time a week" and "2 or more times a week." Doc. 13 at 1639.[3] Above the box for "1 time a week," Kowalczyk added a note, stating "1-2 times." *Id.* She opined that the duration of the headaches was unpredictable, but they could be expected to last more than an hour. Kowalczyk also stated that Capobianco was taking Topamax for the headaches and did not identify any side effects associated with the medication. And Kowalczyk reported that she was unable to identify a "medical, biological, [or] psychiatric basis" for the frequency of Capobianco's headaches. *Id.*

From December 2016 through March 2019, Kowalczyk saw Capobianco eight times. The only records before the ALJ concerning these appointments were after-visit summaries; there were no progress notes. The after-visit summaries showed that Kowalczyk administered Botox injections to Capobianco and that Capobianco took gabapentin, Topamax, and ibuprofen for her headaches. The after-visit summaries included no details about Capobianco's symptoms or the examinations that Kowalczyk performed.

Between June 2019 and March 2021, Kowalczyk saw Capobianco four more times. The record before the ALJ included

---

[3] "Doc." numbers refer to the district court's docket entries.

progress notes for these appointments. The progress notes showed that at the June 2019 appointment, Capobianco received a Botox injection for her headaches. But the notes for this appointment included no details about Capobianco's symptoms or any other information about her treatment or Kowalczyk's examination. The progress notes for the three other appointments showed that the appointments occurred via telehealth, meaning that Kowalczyk did not physically examine Capobianco. At these appointments, Capobianco reported experiencing headaches between 15 and 20 days a month.

The ALJ also reviewed records from several magnetic resonance imaging ("MRI") scans. An MRI scan of Capobianco's brain showed "unremarkable" results. *Id.* at 2359. MRI scans of her cervical and lumbar spine showed only mild or minimal degenerative disc disease and no significant stenosis.

The ALJ issued a written decision denying Capobianco's applications. Applying the five-step sequential evaluation framework, the ALJ determined that Capobianco was not disabled during the relevant period. At the first step, he found that Capobianco had not engaged in substantial gainful activity. At the second step, he concluded that she suffered from several severe impairments, including cervical migraines. At the third step, he determined that she did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.

The ALJ then assessed Capobianco's residual functional capacity. He concluded that she could engage in light work with certain physical and mental limitations.

In assessing residual functional capacity, the ALJ considered Capobianco's testimony that debilitating headaches prevented her from working and the medical records showing that Kowalczyk had treated Capobianco for migraines. But the ALJ noted that for most of the appointments there were no progress notes. For these appointments, the ALJ found that there was nothing that "discuss[ed] [Capobianco's] symptoms, physical examinations, test results, medication management, or prognosis." *Id.* at 44. And for the later appointments for which there were progress notes, the ALJ observed that these appointments generally were conducted via telemedicine without any accompanying physical examination. He also noted that the results of the MRI scans were generally unremarkable and included no "findings that would relate to [her] reported headaches." *Id.* The ALJ thus concluded that medical records did not corroborate Capobianco's testimony about the frequency, intensity, and duration of her headaches.

The ALJ also considered the migraine questionnaire that Kowalczyk completed. He noted that she filled out the questionnaire four months after beginning to treat Capobianco and that it was "not accompanied by any progress notes that correspond with the statements [Kowalczyk] made regarding [Capobianco's] symptoms." *Id.* The ALJ also found that there were "some inaccuracies in the questionnaire" because Kowalczyk indicated that

Capobianco experienced headaches both two or more times per week and one to two times per week. *Id.*

Based on the residual functional capacity assessment, the ALJ concluded at step four that Capobianco was unable to perform her past relevant work. At step five, the ALJ determined that she could perform occupations that existed in significant numbers in the national economy. He thus concluded that she was not disabled during the relevant period. Capobianco sought review from the Appeals Council, which denied review.

Capobianco filed an action in district court challenging the Commissioner's decision. She raised two issues before the district court: (1) whether the ALJ properly weighed Kowalczyk's medical opinions when assessing her residual functional capacity and (2) whether the ALJ failed to adequately develop the record after recognizing that Kowalczyk's treatment notes for several appointments were missing.[4]

The district court affirmed the Commissioner's decision. It acknowledged that the ALJ did not expressly state the weight given to Kowalczyk's opinions. But the court concluded that it was clear from the record that the ALJ had assigned less than controlling weight to these opinions and why he decided to discount them.

---

[4] In the district court, Capobianco also argued that the ALJ erred in giving no weight to the opinion of Dr. Kathleen Jeannot, a physician who performed a consultative examination. Because Capobianco does not raise any argument on appeal challenging the ALJ's assessment of Jeannot's opinions, we do not address this issue.

The court explained that the ALJ determined there was good cause to discount the opinions because Kowalczyk had treated Capobianco for only four months when she completed the questionnaire, Kowalczyk's responses were inconsistent as she opined that Capobianco experienced headaches both two or more times a week and one to two times a week, there were no progress notes that corresponded to the opinions, and the MRI scan of Capobianco's brain showed no abnormalities. The court further determined that substantial evidence supported the ALJ's decision.

The district court then addressed whether the ALJ failed to adequately develop the record by not seeking additional treatment records from Kowalczyk. The court explained that a case should be remanded for failure to develop the record only when there was an evidentiary gap that resulted in unfairness or prejudice to the claimant. The court concluded that there was no prejudice arising from the ALJ's failure to obtain the progress notes because the record contained ample information to allow the ALJ to make an informed decision. Although the ALJ had pointed to the missing notes as one basis for discounting Kowalczyk's opinions in the questionnaire, the court noted that the ALJ also had relied on other grounds to discount the opinions. Given these other grounds, the court concluded that there was no unfairness or clear prejudice to Capobianco. Alternatively, the court determined that there was no reversible error because Capobianco's attorney never asked the ALJ to obtain these records and at the evidentiary hearing represented that the record was complete.

This is Capobianco's appeal.

## II.

When, as here, an ALJ denies benefits and the Appeals Council denies review, we review the ALJ's decision as the Commissioner's final decision. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). We review the Commissioner's decision to determine whether it is supported by substantial evidence, but we review *de novo* the legal principles upon which the decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence refers to "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (alteration adopted) (internal quotation marks omitted). We must affirm the Commissioner's decision if it is supported by substantial evidence, "even if the proof preponderates against it." *Id.* (internal quotation marks omitted).

## III.

We liberally construe Capobianco's appellate brief as raising eight issues. These issues are whether the ALJ: (1) abused his authority by making assumptions about Capobianco's physical impairments and disregarding her concerns that her constitutional rights had been violated; (2) engaged in judicial misconduct by limiting Capobianco's testimony, ignoring her correspondence, and commenting that her cardiologist needed money; (3) misapplied the treating physician rule by relying on the opinions of non-

treating physicians and a consulting psychiatrist over treating physicians; (4) violated Capobianco's constitutional rights as well as her rights under international law; (5) failed to develop and consider a complete record by asking a vague question about Capobianco's pain level, discussing only the parts of the record that supported denying benefits, refusing to allow Capobianco to submit additional evidence after she fired her attorney, and disregarding Kowalczyk's opinions; (6) abused his discretion by limiting Capobianco's testimony, not requiring a physician to answer her questions, ignoring medical evidence that was favorable to her, and questioning her credibility; (7) mischaracterized the record by cherry picking facts and ignoring evidence that showed Capobianco's impairments were more severe; and (8) erred by failing to ask the vocational expert about a hypothetical person with all of Capobianco's limitations and relying on the vocational expert's testimony about the availability of certain jobs in the national economy.

We conclude that Capobianco forfeited all these issues except whether the ALJ erred in failing to give controlling weight to Kowalczyk's opinions. Capobianco forfeited the other issues because she did not raise them in the district court and instead raises them for the first time on appeal. We have "repeatedly held that issues not raised in an initial brief are deemed forfeited and will not be addressed absent extraordinary circumstances." *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1274 (11th Cir. 2024) (alteration adopted) (internal quotation marks omitted). Although we "read briefs filed

10                    Opinion of the Court                    24-10344

by *pro se* litigants liberally," the principles of forfeiture still apply. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

It is true that in certain circumstances we will consider the merits of a forfeited issue. But we will do so only when:

> (1) the issue involves a pure question of law and refusal to consider it would result in a miscarriage of justice; (2) the party lacked an opportunity to raise the issue at the district court level; (3) the interest of substantial justice is at stake; (4) the proper resolution is beyond any doubt; or (5) the issue presents significant questions of general impact or of great public concern.

*Raper*, 89 F.4th at 1274 (internal quotation marks omitted). We cannot say that any of the forfeited issues fall within these exceptions. We thus conclude that the only issue properly before us is whether the ALJ erred in failing to give greater weight to Kowalczyk's opinions.

## IV.

To be eligible for disability insurance benefits or supplemental security income, a claimant must prove that she is disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1). To determine whether a claimant is disabled, an ALJ applies a five-step sequential evaluation process. In the first three steps, the ALJ considers whether (1) the claimant is currently engaged in substantial gainful activity, (2) she has a severe impairment, and (3) her impairment or combination of impairments meet the requirements of a listed impairment. If a

claimant fails to establish that she is disabled at the third step, the ALJ proceeds to step four and considers her residual functional capacity to determine whether she can perform her past relevant work. 20 C.F.R. § 404.1520(a)(4); 416.920(a)(4). If a claimant establishes at step four that she has an impairment that prevents her from doing the kind of work she performed in the past, the ALJ continues to step five and considers whether the claimant can adjust to other work given her residual functional capacity, age, education, and work experience. *Id.* §§ 404.1520(a)(4); 416.920(a)(4).

In this case, we are concerned with the ALJ's assessment of Capobianco's residual functional capacity. She argues that the ALJ erred by failing to give sufficient weight to the opinions of Kowalczyk, her treating neurologist.

To determine whether a claimant is disabled, an ALJ must consider opinions from acceptable medical sources, including physicians. *Id.* §§ 404.1502(a)(1), 416.902(a)(1) For claims like Capobianco's that were filed before March 27, 2017, an ALJ must give a treating physician's opinions "substantial or considerable weight unless there is good cause to discount them." *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021) (internal quotation marks omitted). Good cause to discount an opinion exists when: (1) the "treating physician's opinion was not bolstered by the evidence," (2) the "evidence supported a contrary finding," or (3) the "treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). When an ALJ disregards a

treating physician's opinion, he "must clearly articulate" his reasons for disregarding it. *Id.* Still, we have recognized that "there are no magic words" that an ALJ must use when discounting a treating physician's opinion, and "[w]hat matters is whether the ALJ states with at least some measure of clarity the grounds for his . . . decision." *Raper*, 89 F.4th at 1276 n.14 (alteration adopted) (internal quotation marks omitted).

Here, Capobianco argues that the ALJ erred because he did not state the weight assigned to Kowalczyk's opinions set forth in the headache questionnaire. She is correct that the ALJ did not expressly state that he was giving the opinions little weight. But we agree with the district court that the ALJ's thorough discussion of the questionnaire made clear that he found good cause to assign less than controlling weight to Kowalczyk's opinions. Because an ALJ is not required to use magic words and the ALJ's decision clearly shows the basis for why he assigned Kowalczyk's opinions less than controlling weight, we conclude that the ALJ did not err. *See Raper*, 89 F.4th at 1276 n.14.

We now turn to whether substantial evidence supports the ALJ's decision to give Kowalczyk's opinions little weight. As the ALJ noted, when Kowalczyk completed the headache questionnaire, she had been treating Capobianco for only four months; the record did not include other medical evidence, such as progress notes, that corroborated her opinions; and Capobianco's MRI scans were generally unremarkable. Given all of this, we conclude that substantial evidence supported the ALJ's decision to give little

weight to Kowalczyk's opinions. In reaching this conclusion, we emphasize that our review is limited to whether substantial evidence supported the ALJ's decision; we are not deciding whether we would have reached the same decision if we were sitting as a factfinder. *See Dyer*, 395 F.3d at 1210.[5]

**AFFIRMED.**

---

[5] In the district court, Capobianco also argued that the ALJ erred by failing to adequately develop the record because he did not take any steps to obtain the missing progress notes from Kowalczyk. Even liberally construing Capobianco's appellate brief, she has not raised this issue on appeal and thus has forfeited it. *See Raper*, 89 F.4th at 1274 (recognizing that issues not raised in an initial appellate brief are deemed forfeited).

Even assuming Capobianco had adequately raised this issue on appeal, however, we would conclude that she is not entitled to relief. We agree with the district court's treatment of the issue.