[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15715
Non-Argument Calendar
_____

D.C. Docket No. 2:15-cv-00167-M

ROBERT BRYANT,

Plaintiff-Appellant,

versus

CAROLYN W. COLVIN,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(November 22, 2016)

Before TJOFLAT, WILLIAM PRYOR, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Claimant Robert Bryant appeals the district court's order affirming the Commissioner of Social Security's ("the Commissioner") denial of his application for disability insurance benefits.  On appeal, Bryant argues that the Administrative Law Judge ("ALJ") violated the Social Security Regulations by taking expert testimony by telephone and by not providing adequate notice of such testimony. Bryant further argues that the ALJ's rejection of his treating physician's opinion was not supported by substantial evidence.  After careful review, we affirm.

## I.    BACKGROUND

In October 2011, Bryant filed an application for disability insurance benefits with the Social Security Administration.  Alleging a disability onset date of September 9, 2010, Bryant represented that he was disabled and unable to work because he suffers from knee and back injuries stemming from a fall from a ladder at his job as a service technician.  He continued working until December 9, 2010, when he was terminated from his employment for other reasons.  Bryant indicated that his right knee and back pain prevented him from participating in activities he used to enjoy.

The Commissioner denied Bryant's application for benefits.  At a subsequent hearing before an ALJ, Bryant testified that he stopped working because he injured his back after falling from a ladder at work.  He filed a worker's compensation lawsuit, but that had not yet been settled.  He planned to have

surgery once the pain got better and described the current pain level as an eight on a scale of one to ten. While he took medication for the pain, it did not help much. To assist with the pain, he used a TENS unit[1] every day and had had four nerve blocks and one neuro block. He also needed to lie down between two and four hours per day. As to daily activities, Bryant did not do any household chores, drive, or go to the grocery store.

At the conclusion of Bryant's testimony, the ALJ continued the hearing to obtain testimony from an orthopedic doctor regarding Bryant's limitations. That same day, Bryant filed a motion to exclude expert testimony by any method other than those provided for in the regulations: in person or by video conference. Prior to the supplemental hearing, the ALJ issued a notice to Dr. Allan Levine, requesting his testimony as a medical expert at Bryant's supplemental hearing.

At the supplemental hearing held on May 29, 2013, Dr. Levine testified by phone. Bryant stipulated that Dr. Levine was a qualified medical expert, but objected to the method by which Dr. Levine would be providing testimony. The ALJ overruled the objection, noting that the regulation pertaining to telephonic testimony had changed, and he proceeded to question Dr. Levine. Dr. Levine

---

[1] A TENS unit is a small battery-operated device that helps back pain by sending electrical currents from the device to the skin. Back Pain Health Center, WEBMD, http://www.webmd.com/back-pain/guide/tens-for-back-pain (last visited Oct. 5, 2016).

pointed out that Bryant had worked past his alleged onset date of September 9, 2010, prompting Bryant to amend his disability onset date to December 9, 2010.

After asking Bryant a series of questions, Dr. Levine opined that Bryant had a medically determinable impairment of chronic right knee pain, secondary to a partial tear of the lateral and medial meniscus. Dr. Levine noted that a progress note dated November 11, 2010, from Dr. Scott Atkins, the doctor who performed knee surgery on Bryant in October 2010, indicated that Bryant could return to work without restriction. Dr. Levine also noted that Bryant had chronic back pain, secondary to diagnosis of multi-level degenerative disc disease. However, Bryant's knee and back pain did not meet or equal any of the listed impairments because there was no evidence showing an inability to effectively ambulate his knee, nor was there any evidence of a comprised nerve root or spinal cord.

The ALJ permitted Bryant's attorney to question Dr. Levine, but Dr. Levine could not initially hear the questions. Bryant's attorney expressed concern that it was difficult to cross-examine when the expert could not hear the questions. While the ALJ repeated Bryant's attorney's initial questions to the medical expert, Bryant's attorney was eventually able to directly question Dr. Levine. The ALJ did not permit Bryant's attorney to question Dr. Levine regarding how many hearings Dr. Levine had testified at, or whether he was an occupational therapist, on the basis that those questions were not relevant. Following the questions from

4

Bryant's attorney, Dr. Levine opined that Bryant could sit for six hours out of eight-hour day, stand for four hours in an eight-hour day but no more than 30 minutes at a time without a short break, and walk for four hours in an eight-hour day but no more than 40 minutes at a time without a short break.

At the conclusion of Dr. Levine's testimony, the ALJ sought testimony from the vocational expert. The vocational expert explained that while Bryant could not perform his past relevant work—classified as medium, skilled work with heavy exertion—if he required a job that provided him a sit/stand option, there were other jobs Bryant could perform, such as a marker, a garment sorter, or a dowel inspector. When the ALJ added additional limitations, such as the ability to sit only two hours per day and walk or stand only one hour per day, the vocational expert stated that there would be no jobs that Bryant could perform.

Following the hearing, the ALJ issued a decision, concluding that Bryant was not disabled for purposes of disability insurance benefits. Specifically, upon review of the evidence, the ALJ concluded that Bryant suffered from multi-level degenerative disc disease of the lumbar spine and facet spondylosis (spinal degeneration), but determined that these impairments did not meet or equal any of the listed impairments in the Social Security regulations. The ALJ determined that Bryant could perform light work, not precluded by the inability to stand more than 30 minutes at a time without a short break or the inability to walk more than 40

minutes at a time without a short break, and with restrictions on activities such as climbing ladders, ropes, or scaffolds, crouching, stooping, and bending, and exposure to heavy machinery or dangerous equipment.

Because Bryant's past relevant work as a HVAC service technician was classified as medium, skilled work that required heavy exertion, the ALJ concluded that Bryant could not perform his past relevant work. The ALJ also reviewed the medical evidence, including the opinions of Bryant's treating physician at The SpineCare Center, Dr. Wesley Spruill, who placed only one restriction on Bryant's ability to work—that he could not lift more than 75 pounds—as well as the opinion of Bryant's other treating physician, Dr. Perry Timberlake, who determined that Bryant was completely disabled and unable to work, and, finally, the opinion of the consulting orthopedist, Dr. Levine, who opined that Bryant could perform light work with a sit/stand option. The ALJ afforded significant weight to the opinion of Dr. Spruill, but rejected Dr. Timberlake's opinion on the basis that it was inconsistent with the medical record and his own treatment notes. Based on Bryant's age, education, and residual functional capacity, coupled with the vocational expert's opinion that a significant number of jobs accommodating Bryant's limitations existed in the national economy, the ALJ concluded that Bryant was not disabled. The Appeals Council denied Bryant's request for review.

In 2015, Bryant filed a complaint in the district court challenging the denial of disability insurance benefits.  He argued that the ALJ erred by rejecting the opinion of his treating physician.  He further asserted that the ALJ violated the Social Security regulations and the agency's internal manual by improperly taking telephonic testimony from the medical expert.

The parties consented to a magistrate judge conducting the proceedings.  A magistrate judge later issued an order affirming the ALJ's denial of disability insurance benefits.  The magistrate judge concluded that the ALJ had good cause for discrediting Bryant's treating physician's opinion that Bryant was disabled because the treating physician's own notes did not support that conclusion.  And while the magistrate judge determined that the ALJ erred by taking the medical expert's testimony telephonically, he concluded that the error was harmless.  This appeal followed.

## II.     DISCUSSION

### A.     Standard of Review

We review the ALJ's decision for substantial evidence, but its application of legal principles *de novo*.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  Substantial evidence is "more than a mere scintilla, but less than a preponderance."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotations omitted).  When reviewing for substantial evidence, we may not

reweigh the evidence, decide facts anew, or substitute our own judgment for the decision of the Commissioner.  *Id.*  We must affirm the Commissioner's decision if it is supported by substantial evidence, regardless of whether "the proof preponderates against" the Commissioner's decision.  *Id.*

### B.    Medical Expert's Telephonic Testimony

Bryant first argues that the ALJ violated the Social Security Regulations by taking the medical expert's testimony telephonically, and by not providing adequate notice of that testimony.

When an agency violates its own governing rules, we have held that a remand is necessary only if the violation results in prejudice.  *See Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. Unit A Sept. 1981).  At the time of Bryant's supplemental hearing on May 29, 2013, the Social Security regulations provided that "[w]itnesses may appear at a hearing in person, or . . . by video teleconferencing."  20 C.F.R. § 404.950(e) (2012).  While the regulation was amended on May 21, 2013, to provide that witnesses may appear in person, by video teleconferencing, or by telephone, it did not go into effect until June 20, 2013—which was after the supplemental hearing but before the ALJ issued his decision on June 27, 2013.  *Id.* § 404.950(e) (2013).

Regardless of which regulation governs, it is debatable whether the ALJ violated the regulations by having the medical expert, Dr. Levine, testify by phone.

Although the regulations did not expressly provide for telephonic testimony, they did not prohibit it either. *See id.* § 404.950(e) (2012); *see also Hepp v. Astrue*, 511 F.3d 798, 805–06 (8th Cir. 2008) (stating that the Court did not believe that "in a non-adversarial proceeding, an in-person cross-examination would significantly increase the accuracy of determining a witness's credibility over that of a telephone cross-examination").

The closer question is whether the ALJ violated the regulations by providing inadequate notice that Dr. Levine would be testifying by telephone. The regulations in effect at the time of the supplemental hearing provided that the claimant would be told "if [his] appearance or that of any other party or witness is scheduled to be made by video teleconferencing rather than in person." 20 C.F.R. § 404.938(b) (2012).[2] The notice to Bryant regarding the supplemental hearing (that is included in the administrative record) states that: "A medical expert will testify at your hearing. You will be able to see, hear, and speak to the experts using a color monitor." Because Dr. Levine testified telephonically, it appears that Bryant was not provided adequate notice under the regulation. *See id.*

Importantly, however, Bryant concedes in his brief on appeal that shortly after he filed his motion to exclude expert testimony by telephone on March 22,

---

[2] An amended regulation went into effect on June 20, 2013, and provides that, "[The claimant] will also be told if [his] appearance or that of any other party or witness is scheduled to be made in person, by video teleconferencing, or by telephone." 20 C.F.R. § 404.938(b) (2013).

2013, he received a notice by fax from the ALJ on April 2, 2013, indicating that the medical expert would be testifying by phone. This notice is not included in the administrative record.[3] But given his admission that he received notice that Dr. Levine would testify telephonically, it is puzzling why he asserts on appeal that he did not receive such notice. But even assuming that the ALJ violated the regulations by taking telephonic testimony and by not providing Bryant adequate notice of it, we need not remand because Bryant cannot show that he was prejudiced. *See Hall*, 660 F.2d at 119.

Bryant asserts that he was prejudiced by Dr. Levine's telephonic testimony because his attorney had to alter the way in which he asked questions. However, the transcript from the supplemental hearing shows that Bryant's attorney was able to communicate directly with Dr. Levine for part of the examination, and when the ALJ did have to repeat some of the questions for Dr. Levine at the beginning of the questioning, the ALJ accurately repeated those questions. Moreover, although the ALJ asked Bryant's attorney to simplify the questions, Bryant has not shown that he would have elicited any different testimony from Dr. Levine had he been permitted to ask more complex questions. Thus, Bryant has not shown that he was prejudiced by the manner of testimony or the lack of notice.

---

[3]  Bryant states that although the ALJ requested that the notice be scanned into the administrative record, it must not have been scanned as the ALJ had requested.

We reject his argument that he was prejudiced by not being permitted to ask Dr. Levine (1) how many hearings he had testified at, or (2) whether he was an occupational therapist. The ALJ rejected these questions because they were not relevant. Indeed, they were duplicative of the questions the ALJ asked regarding Dr. Levine's qualifications at the beginning of the hearing. Moreover, Bryant had already stipulated to Dr. Levine's qualification as a medical expert.

We are also not persuaded by Bryant's argument that Dr. Levine's testimony was not based on the entire record because it did not include five exhibits that were added after the hearing. The exhibits that Bryant refers to are treatment records from Drs. Spruill and Timberlake dated between January 2012 and May 2013 and an MRI dated March 12, 2013. However, Bryant does not explain how these exhibits would have changed Dr. Levine's opinion. In any event, like the previous treatment notes, these notes reiterate that Bryant has a "broadbased disc bulge with central disc protrusion." The March 2013 MRI specifically states that the lumbar spine MRI results were "unchanged in appearance compared to [the MRI results on] 6/15/2011." And Dr. Levine reviewed and discussed the June 2011 MRI at the supplemental hearing. Based on the foregoing reasons, Bryant cannot show

that he was prejudiced by any error in the ALJ's taking of telephonic testimony, or the notice provided regarding that testimony.[4]

### C.    Weight ALJ Assigned to Dr. Timberlake's Opinion

Bryant argues that substantial evidence does not support the ALJ's rejection of the opinion of his treating physician, Dr. Timberlake.  Specifically, he asserts that the ALJ improperly dismissed Dr. Timberlake's opinion that Bryant was completely disabled because Dr. Timberlake's opinion was consistent with the treatment notes of Dr. Spruill.

When evaluating the medical opinion evidence, the ALJ must give the opinion of a treating physician "substantial or considerable weight" unless there is good cause not to do so.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quotations omitted); 20 C.F.R. § 404.1527(c)(2) (stating that the opinion of a treating physician will be given controlling weight if it is supported by medically acceptable and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record).  A treating source is defined as "[the claimant's] own physician . . . who provides [the claimant] . . . with medical

---

[4]  Bryant also argues that he was prejudiced because the ALJ afforded significant weight to Dr. Levine's testimony, and Dr. Levine's testimony was inconsistent with the opinions of Bryant's treating physicians.  We decline to address this argument because it was not raised in the district court.  *See Stewart v. Dep't of Health and Human Servs.*, 26 F.3d 115, 115 (11th Cir. 1994) (declining to consider claimant's arguments related to the denial of disability benefits because the claimant did not present any of his arguments to the district court).

12

treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]."  20 C.F.R. § 404.1502.

We have nevertheless concluded that good cause exists for affording less weight to a treating physician's opinion when:  "(1) [that] opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).  If the ALJ chooses to assign less weight to a treating physician's opinion, however, he must clearly articulate his reasons for doing so.  *Id.*

Bryant's medical record includes a treatment note from Dr. Timberlake dated August 3, 2012, in which Dr. Timberlake states that Bryant is "completely and totally disabled to do gainful work now or in future," based on, among other things, severe lumbar disc disease and chronic pain.  The record also includes a medical source statement (physical) completed by Dr. Timberlake on April 24, 2013, in which Dr. Timberlake opines that Bryant can sit for two hours in an eight-hour day, stand or walk for one hour in an eight-hour day, and lift five pounds occasionally.  The medical source statement further provides that Bryant could never bend, stoop, or reach, rarely push/pull or climb stairs, and would miss work more than three times per month.  Dr. Timberlake described Bryant's pain as "profound and intractable, virtually incapacitating for this individual."  The ALJ

13

assigned little weight to Dr. Timberlake's opinion because it was inconsistent with other evidence in the record, including Dr. Timberlake's own treatment notes.

We conclude that substantial evidence supports the ALJ's articulation of good cause for discrediting Dr. Timberlake's opinion that Bryant was "completely disabled," as well as his opinion regarding Bryant's limitations. Specifically, Dr. Timberlake's opinion was not supported by his own treatment notes. The ALJ noted that although Dr. Timberlake opined that Bryant was completely disabled and severely limited by incapacitating pain, Dr. Timberlake's treatment notes showed that examination of Bryant's musculoskeletal region/back only ever revealed moderate tenderness. Other than tenderness in the back and references to Bryant's severe degenerative disc disease, Dr. Timberlake's treatment notes are devoid of any other findings that would support Dr. Timberlake's opinion regarding Bryant's limitations and the fact that Bryant would miss more than three days of work per month.

The ALJ's decision to give little weight to Dr. Timberlake's opinion is also supported by other evidence in the record. The ALJ noted that Dr. Timberlake's August 3, 2012 treatment note stated that Bryant's MRI revealed several ruptured discs, but the MRI results available at that time (September 2010 and June 2011) actually reflected only bulging discs. Moreover, Bryant's other treatment records consistently reflect that Bryant exhibited between 4/5 and 5/5 lower extremity

14

motor strength, mild pain in the lumber region, and no muscle atrophy.  Further, Dr. Bryan Givhan, a neurologist who examined Bryant's chronic back pain in June 2011, determined that surgical intervention was not necessary and that Bryant could work and was not at risk of "tearing anything up."  And notably, after Bryant was injured in July 2010, he continued to work until December 9, 2010, when he was terminated for other reasons.  Because Dr. Timberlake's opinion is not bolstered by the medical record or by his conclusory treatment notes, the ALJ had good cause for assigning no weight to the opinion.

Bryant asserts that Dr. Timberlake's opinion was consistent with the treatment notes of Bryant's other treating physician, Dr. Spruill.  As noted, Dr. Spruill, a physician at The Spinal Care Center, treated Bryant from 2010 until 2013.  While under Dr. Spruill's care, Bryant received several epidural steroid and joint block injections between 2010 and 2013.  Consistent with Dr. Timberlake's treatment notes, Dr. Spruill's treatment notes indicate that Bryant has a "small central disc protrusion" and "degenerative disc disease."  Nevertheless, Dr. Spruill never found Bryant to be "completely disabled," but instead found him to be at maximum medical improvement, a finding that Dr. Spruill never retracted as he continued to treat Bryant until 2013.  Moreover, the only work restriction Dr. Spruill ever placed on Bryant was that he could not lift more than 75 pounds.  And while the ALJ discredited Dr. Timberlake's opinion, the ALJ assigned significant

15

weight to the opinion of Dr. Spruill.  Therefore, to the extent there were inconsistencies between the opinions of Drs. Spruill and Timberlake, substantial evidence supports the ALJ's decision to assign increased weight to Dr. Spruill's opinion based on the length of the treatment relationship with Bryant.  *See* 20 C.F.R. § 404.1527(c).

We are also not persuaded by Bryant's argument that the ALJ failed to consider Dr. Timberlake's treatment records.  While the ALJ did not refer to every single one of Dr. Timberlake's treatment records, he did explicitly refer to several of them such that we are satisfied the ALJ considered Bryant's medical condition as a whole.  *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (explaining that the ALJ does not need to refer to each piece of evidence, so long as the ALJ's explanation is enough to show the reviewing court that the ALJ considered the claimant's condition as a whole).

Finally, Bryant's argument that the ALJ failed to consider Bryant's March 2013 MRI is without merit.  The March 2013 MRI indicates that Bryant has a "diffuse disc bulge with suggestion of an overlying broad-based small central disc protrusion."  But the results indicate that "[t]his is unchanged in appearance compared" to the results of the June 2011 MRI and that there was "overall no significant change."  Dr. Spruill reviewed the March 2013 MRI and concluded that the results from that MRI were unchanged in appearance compared to the June

16

2011 MRI.  Therefore, to the extent the ALJ did not consider the March 2013 MRI, any error was harmless because the earlier MRI in June 2011 alerted him to the same medical evidence and thus would not have changed the decision.  *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (concluding that an error is harmless if it does not affect the ALJ's ultimate decision).

Accordingly, because good cause existed for discounting the opinion of Dr. Timberlake, the ALJ did not err by assigning that opinion less weight.  *See Hunter v. Social Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015) ("We will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a special justification for it.").

## III.    CONCLUSION

For all of the above reasons, we affirm the district court's order affirming the Commissioner's denial of Bryant's application for disability insurance benefits.

**AFFIRMED.**