[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11853
Non-Argument Calendar
_____

D.C. Docket No. 5:15-cv-02002-LSC


THOMAS F. UNDERWOOD,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(October 26, 2018)

Before MARCUS, NEWSOM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Thomas Underwood appeals the district court's order affirming the Commissioner of the Social Security Administration's decision to deny his application for disability insurance benefits, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  On appeal, he argues that substantial evidence does not support the administrative law judge's decision to give parts of his treating physician's opinions little evidentiary weight.  In addition, he argues that the ALJ's determination that he was not credible was not supported by substantial evidence.  We find substantial evidence to support both decisions; therefore, we affirm.

**I**

We review a Social Security case to determine whether the Commissioner's decision is supported by substantial evidence, but we review *de novo* whether the correct legal standards were applied.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  Substantial evidence is any relevant evidence, greater than a scintilla, that a reasonable person would accept as adequate to support a conclusion.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  If, in light of the record as a whole, substantial evidence supports the Commissioner's decision, we will not disturb it.  *Id.* at 1439.  Under this standard of review, we will not re-assess the facts, make credibility determinations, or re-weigh the evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

The Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is disabled: (1) whether the claimant is "engaged in substantial gainful activity"; (2) if not, whether he "has a severe impairment or combination of impairments"; (3) if so, whether that impairment, or combination of impairments, meets or equals the listings in 20 C.F.R. § 404, Subpart P; (4) if not, whether he can perform his past relevant work in light of his residual functional capacity (RFC); and (5) if not, whether, based on his age, education, and work experience, he can perform other work found in the national economy. *Winschel*, 631 F.3d at 1178; 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

At step four of the sequential analysis, the ALJ must determine a claimant's RFC by considering all relevant evidence—medical and otherwise. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The ALJ must "state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179 (citation omitted). An ALJ considers many factors when weighing medical opinion evidence, including the examining relationship, the treatment relationship, whether an opinion is well-supported, and whether an opinion is consistent with the record. 20 C.F.R. § 404.1527(c).

The ALJ must give a treating physician's medical opinion "substantial or considerable weight," unless the ALJ clearly articulates good cause for discrediting

that opinion. *Winschel*, 631 F.3d at 1179. "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* (citations and quotations omitted).

Substantial evidence supports the ALJ's determination that Dr. Royster's opinions regarding Underwood's peripheral neuropathy, need to lie down two to three times per week for one hour, and mental-health impairments were inconsistent with the totality of the evidence, including his own medical records. Underwood started seeing Dr. Royster as his primary treating physician in 1992 and created a consistent medical record with him. From 2005, when Underwood alleged he became disabled, until 2009, when he was last insured, Underwood had approximately seven appointments with Dr. Royster. None of Underwood's medical records during that period, however, mention mental-health problems or depression. Nor do Underwood's three other doctors from that time period mention the debilitating symptoms. The first time Dr. Royster suggested that Underwood should be considered disabled—an administrative determination reserved for the Commissioner, 20 C.F.R. § 404.1527(d)(1)—was on March 23,2010, after Underwood's last insured date.

In addition, at Underwood's second hearing before an ALJ, a board-certified internist and specialist medical doctor testified that neither the peripheral neuropathy nor the diabetes led to any functional limitations before Underwood's last insured date. The ALJ's decision, issued on remand after a second hearing was held specifically for further consideration of Dr. Royster's records and letters, noted that Dr. Royster's letters were inconsistent with the medical records developed from 2005 to 2009. The ALJ further noted that the medical records were contemporaneous with Underwood's symptoms and treatment, and thus deserved more weight.

The ALJ had good cause to depart from Dr. Royster's opinions because they were not supported by his own medical records, by the testifying doctor, or by any of Underwood's other medical specialists. *See Winschel*, 631 F.3d at 1179. Substantial evidence supports the ALJ's decision to give parts of Underwood's treating physician's opinions little evidentiary weight, as the physician's opinions were inconsistent with his own treatment records, and the medical evidence as a whole.

## II

Underwood also alleges that the ALJ's determination that he was not credible was not supported by substantial evidence. The individual seeking Social Security disability benefits bears the burden of proving that he is disabled. *Moore*,

5

405 F.3d at 1211 (citation omitted).  A claimant may establish that he has a

disability through his "own testimony of pain or other subjective symptoms."  *Dyer*

*v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  In such a case, the claimant

must show:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.* (quotation omitted).  In evaluating a claimant's testimony, the ALJ should

consider: (1) the claimant's daily activities; (2) the "location, duration, frequency,

and intensity" of the claimant's symptoms; (3) "[p]recipitating and aggravating

factors"; (4) the effectiveness and side effects of any medications; and

(5) treatment or other measures taken by the claimant to alleviate symptoms.  20

C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  The ALJ is to consider these factors in

light of the other evidence in the record.  20 C.F.R. §§ 404.1529(c)(4),

416.929(c)(4).  If the ALJ discredits the claimant's testimony regarding subjective

symptoms, she "must clearly articulate explicit and adequate reasons" for doing so.

*Dyer*, 395 F.3d at 1210 (quotation omitted).  Such "credibility determinations are

the province of the ALJ," and "we will not disturb a clearly articulated credibility

finding supported by substantial evidence."  *Mitchell v. Comm'r of Soc. Sec.*, 771

F.3d 780, 782 (11th Cir. 2014).

6

Substantial evidence supports the ALJ's determination that Underwood's subjective symptom complaints were not entirely credible.  Underwood testified that his melanoma treatment caused him to be unable to function normally for a year, but his medical records report no complaints or issues during that time. Instead, his specialists reported that Underwood's scars were healing well and he reported no pain; his only restriction was to avoid exposure to sunlight.  The objective evidence does not show that Underwood was unable to function normally for a year during his recovery from melanoma treatment and surgery.

Underwood also testified that his neuropathy caused hypersensitivity and pain in his feet and legs; that stress from his melanoma treatment worsened his diabetes and caused depression and anxiety; and that physical and mental exhaustion required him to lie down for an hour during the day once or twice a week.  But as we have already explained, none of Underwood's medical records note signs of depression or anxiety before the date he was last insured.  Likewise, his medical records do not indicate symptoms of or discussions about neuropathy or a need to rest for an hour during the day.  In fact, Underwood also testified that his daily routine continued include walks by himself, visits to the store for groceries, and working at the office with his wife.

Substantial evidence supports the ALJ's determination that Underwood was not credible, as his subjective complaints were inconsistent with the objective

medical evidence from Dr. Royster, his other specialists, his contemporaneous comments in medical records, and his continued daily routine.  Accordingly, we **AFFIRM**.