[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11717
Non-Argument Calendar

_____

D.C. Docket No. 3:16-cv-00141-RGV


PATRICK N. BARNES

                                        Plaintiff – Appellant,


versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION

                                        Defendant – Appellee.



_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(February 27, 2019)


Before TJOFLAT, JORDAN, and GRANT, Circuit Judges.

PER CURIAM:

Patrick Barnes appeals the district court's order affirming the administrative law judge's denial of his application for a period of disability, disability insurance benefits, and supplemental security income under 42 U.S.C. §§ 405(g) and 1383(c)(3).  Because substantial evidence supports the ALJ's findings, we affirm.

## I

Mr. Barnes filed for disability on November 23, 2010, alleging that he had been disabled since October 31, 2002, when he was thirty-nine years old.  He contends that he cannot work because of breathing problems, anxiety, and an enlarged prostate, which forces him to take frequent bathroom breaks.  His claim was initially denied, and denied again after he requested a hearing before an ALJ.  The Appeals Council then remanded the case to the ALJ (1) to evaluate Mr. Barnes' mental impairment; (2) to reconsider Mr. Barnes' "residual functional capacity" ("RFC," or "the most [a disability claimant] can do despite [his or her] limitations," *see* 20 C.F.R. § 404.1545); and (3) to rely on supplemental evidence from a vocational expert, if necessary, to understand Mr. Barnes' occupational limitations.

The ALJ held a new hearing and again denied Mr. Barnes' claim.  The ALJ found that Mr. Barnes suffered from "anxiety disorder and mild chronic obstructive pulmonary disease," which amounted to "severe impairments."  Supp. App. at 15.  Mr. Barnes also had "nonsevere" conditions that included his enlarged prostate and

frequent urination claim.  But the ALJ noted that Mr. Barnes had not seen a urologist since 2008, admitted that he took over-the-counter supplements that helped with his condition, and there was "no new evidence of a urinary impairment in the record." Supp. App. at 16.    Considering Mr. Barnes' impairments alone and "in combination," the ALJ concluded that there "is no evidence in the record to demonstrate the claimant has complete inability to function independently outside the area of the home."  Supp. App. at 17–18.

The ALJ did, however, conclude that Mr. Barnes' conditions limited the type of work he could perform.  "After careful consideration of the entire record," the ALJ held that Mr. Barnes "has the residual functional capacity to perform light work" with "skill levels of one or two" that are "low stress," "have few changes in the workplace[,] and require occasional, simple decision-making."  Supp. App. at 18–19.  The ALJ explicitly considered Mr. Barnes' testimony, but did not find his statements "concerning the intensity, persistence and limiting effects of these symptoms" to be "entirely credible" because it conflicted with his doctors' diagnoses and medical treatment history.  Supp. App. at 20.

The ALJ also relied on a vocational expert for his decision.  The ALJ asked the vocational expert to consider a hypothetical person like Mr. Barnes:

> Assume a hypothetical claimant with the same age, education, and vocational profile as the claimant, capable of light work, no climbing of ropes, ladders, or scaffolds. No working at exposed heights near dangerous machinery

3

or driving, no concentrated exposure to pulmonary irritants. Limited to simple jobs, which I will define as working at skill levels 1 or 2, limited to low stress jobs only, which I will define as few changes in the workplace, and occasionally simple decision making. And I will say limited to occasional superficial contacts with the general public and coworkers. And I will say no working outdoors. . . . Would there be light unskilled jobs available for the hypothetical claimant?

Supp. App. at 126. The vocational expert testified that this hypothetical person could do "light unskilled work" such as "laundry folder," "garment bagger," and "garment sorter." Supp. App. at 127. The ALJ also asked:

Tell me if any of these [hypotheticals] will allow for competitive work. If I concluded either, that the hypothetical claimant would be unable to maintain focus, concentration, persistence, or pace for up to one third of a work day on a daily basis or would need frequent, unscheduled breaks in addition to regularly scheduled breaks on a daily basis or would be absent an average of three days a month on a continuing and an unscheduled basis, would any of these allow for competitive work?

Supp. App. at 129. The vocational expert testified that none of these restrictions would allow for competitive work. *Id.*

Having ultimately found that Mr. Barnes' limitations did not fit the assumptions of its latter question, the ALJ concluded that the vocational expert's testimony supported the his decision that Mr. Barnes could perform light work, such as laundry folder or garment sorter. Mr. Barnes appealed to the Appeals Council, which denied his request for review.

4

In the district court, Mr. Barnes challenged the ALJ's finding that he did not have significant prostate or bladder impairments, that he could perform light work, that his testimony was not credible, and that jobs existed in the national economy that he could perform.  The district court affirmed the ALJ's decision.

On the first challenge, the district court ruled that "there is substantial evidence in the record to support the ALJ's finding that claimant's prostate or bladder impairment was not severe."  D.E. 17 at 40.  And the court noted that Mr. Barnes "has failed to point to any objective medical evidence of limitations that support his claim that his prostate or bladder impairment was severe."  *Id.*  And even if the ALJ erred, the court explained, the error was harmless because the ALJ considered all of his impairments when determining his residual functional capacity.  *Id.* at 42.

The district court also agreed with the ALJ that substantial medical evidence supported the conclusion that Mr. Barnes could perform some light work at existing jobs.  In particular, the court noted that "none of claimant's treating physicians imposed any limitations on claimant as a result of [his] impairments."  *Id.* at 51.  To the extent that Mr. Barnes' conditions limited his abilities, the court concluded that the "ALJ [had] adequately accounted for these impairments in his RFC finding that claimant was capable of a limited range of light work."  *Id.* at 52.  Although Mr. Barnes alleged that the ALJ relied on incorrect hypothetical questions posed to the

vocational expert, the district court concluded that the ALJ had properly tailored the hypothetical question to Mr. Barnes' medical history and his own conclusions about Mr. Barnes' abilities. *Id.* at 64–65.

Finally, the district court affirmed the ALJ's credibility determination. "The ALJ's decision," the court concluded, "reveals that he applied the appropriate standard and discussed adequate reasons, considering the claimant's treating physicians' notes, his medical history, diagnoses, and treatments, for finding claimant not entirely credible." *Id.* at 60.

Mr. Barnes appealed.

## II

We review the ALJ's decision to ensure that it is supported by "substantial evidence" and that the ALJ applied "the correct legal standards." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). We review *de novo* the district court's determination of whether substantial evidence supports the ALJ's decision. *Id.* "If the [ALJ's] decision is supported by substantial evidence[,] we must affirm." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quotation omitted). "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [ALJ]." *Id.*

Mr. Barnes' one-page, handwritten brief on appeal argues that the questions posed by the ALJ to the vocational expert did not include the problems caused by

6

his enlarged prostate, and so the vocational expert listed jobs that he could not perform. *See* Appellant's Br. at 1. In his reply, he further argues against the ALJ's credibility report and cites to several websites that he believes show that his enlarged prostate "can have a major effect on a person's lifestyle." Reply Br. at 1.

Vocational experts are "expert[s] on the kind of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240. ALJs rely on such expert testimony as substantial evidence for whether a claimant can perform jobs in the national economy. *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). To do so, ALJs "must pose a hypothetical question which comprises all of the claimant's impairments." *Id.*

Mr. Barnes alleges that the ALJ's hypothetical question did not cover his enlarged prostate problems and need to take frequent bathroom breaks. But in fact, the ALJ explicitly incorporated Mr. Barnes' additional conditions into his hypothetical questions for the vocational expert. The ALJ posed two hypotheticals to the vocational expert. The first question listed a series of limitations related to Mr. Barnes' conditions. The second question incorporated Mr. Barnes' enlarged prostate problem and need for frequent bathroom breaks. The ALJ asked: "If I concluded . . . [that the claimant] would need frequent unscheduled breaks in addition to regularly scheduled breaks on a daily basis . . . [would this] allow for competitive work?" Supp. App. at 129.

Furthermore, the ALJ concluded that Mr. Barnes' claims of an enlarged prostate that caused him to need frequent bathroom breaks was not a condition that impaired Mr. Barnes' ability to work. So it was not a condition that the ALJ was required to incorporate into its assessment. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007) ("The hypothetical need only include the claimant's impairments, not each and every symptom of the claimant. The characteristics that the [ALJ] omitted are among those that [the claimant] alleged to suffer but were either not supported by her medical records or were alleviated by medication.").

Finally, we conclude that the ALJ's credibility determination is supported by substantial evidence. An ALJ "must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations of completely disabling symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted). We are satisfied that the ALJ did so here. Mr. Barnes challenges the ALJ's credibility decision about his enlarged prostate and his need for frequent bathroom breaks. The ALJ considered Mr. Barnes' testimony regarding the difficulties associated with this condition. But the ALJ concluded that "[t]he evidence indicates that the claimant took prescription medications that helped the claimant's urgency and frequency problems." Supp. App. at 16. Furthermore, the ALJ noted that Mr. Barnes "has not seen a urologist since 2008, and during the hearing, he admitted that he only takes

8

over-the-counter herbal supplements for the condition." *Id.* Since there was "no new evidence of a urinary impairment in the record," the ALJ found that Mr. Barnes' condition was not severe. *Id.*

Mr. Barnes seeks to introduce, on appeal, new "evidence that does in fact prove [his] testimony could be a possibility in accordance with other medical experts." Reply Br. at 1. This evidence includes several websites such as: "1on1health.com," "enlarged prostate resources at web md," "American Prostate Society," and "American Urological Association." *Id.* Even if we found these websites to be valid medical evidence, which could be judicially noticed, additional evidence may not be introduced into the record on appeal after the ALJ's decision, absent good cause. *See Ingram*, 496 F.3d at 1267. There is no good cause here, so we may not consider Mr. Barnes' evidence. The ALJ adequately explained its credibility determination, so we affirm on these grounds as well.

### III

The district court's decision is **AFFIRMED.**