[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12100

_____

D.C. Docket No. 9:17-cv-80368-KAM

RUTH L. KAPLOWITZ,

                                                            Plaintiff - Appellant,

versus

ACTING COMMISSIONER OF SOCIAL SECURITY,

                                                            Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 17, 2020)

Before ED CARNES, Chief Judge, LUCK, and MARCUS, Circuit Judges.

PER CURIAM:

Ruth Kaplowitz was injured in a car accident in 1993. She alleges that as a result of her injuries, she became completely disabled and unable to work in 1996. Her disability insurance coverage extended until 2002. But she did not apply for disability insurance benefits until July 2013, eleven years after her coverage expired. She was denied benefits and challenged that denial without success. This is her appeal from the district court's grant of summary judgment to the Social Security Commissioner.

## I. FACTS

### A. Medical History

Kaplowitz worked as an office manager for a family business when, in July 1993, she was in a car accident that resulted in a "double whip lash" injury. Over the course of several weeks she developed "severe neck stiffness" and numbness of her "upper right extremity" (her right arm and the surrounding area); she obtained physical therapy, which reduced but did not eliminate her pain. Over the next year-and-a-half she suffered intermittent pain, including numbness, tingling, burning, and weakness; she also experienced some "severe" increases in pain. In February 1995 she had an MRI that revealed that she had a herniated disc.

Kaplowitz came under the care of Dr. Roberta Shapiro in February 1996. Dr. Shapiro tried a variety of treatments to manage Kaplowitz's pain. She first gave Kaplowitz trigger point injections, prescribed medicine for the pain and

2

headaches, and recommended more physical therapy. She also tried adjusting Kaplowitz's medicine, and she prescribed epidural injections. Kaplowitz reported that those treatments provided some relief.

In November 1996, Kaplowitz was referred to Dr. Patrick O'Leary, a spinal surgeon. He performed spinal surgery on December 24, 1996, in an attempt to help relieve her pain.

December 31, 1996 marked the beginning of the "covered period," the time during which Kaplowitz contends that she was unable to work and was also covered by disability insurance. Kaplowitz contends that it was on that day that she became completely unable to work. She saw Dr. O'Leary in February 1997, six weeks after her surgery, and reported neck pain and shoulder, arm, and hand discomfort. She said that she was "not sure about her working condition yet." Dr. O'Leary examined her and found that she was "doing well from an objective point of view."

Kaplowitz did not return to Dr. Shapiro until November 1997, almost a year after her surgery. She reported that her neck pain had improved but that she continued to have symptoms in her right arm and a "numb, tingling feeling." Dr. Shapiro continued to treat Kaplowitz occasionally, but there were extended periods of time during which Kaplowitz did not seek treatment. Two gaps in treatment

3

lasted nearly a whole year: from August 1999 to June 2000 and from January 2001 to October 2001.

Kaplowitz became ineligible for disability insurance benefits on March 31, 2002, and that is the date the covered period ends. But Dr. Shapiro continued to treat Kaplowitz long after the end of the covered period. The issue in this case is whether the ALJ erred in determining that Kaplowitz was not completely disabled during the covered period. As we have mentioned, the covered period extends from December 31, 1996, when Kaplowitz allegedly became unable to work, until March 31, 2002, which is the last day that she was covered by disability insurance.

Dr. Shapiro made three statements (two in 2013 and one 2014) that are central to this case. First, in June 2013 Dr. Shapiro wrote a letter outlining the treatment she had provided to Kaplowitz since 1996. (We will refer to it as the 2013 letter.) She described Kaplowitz as getting by with "a very minimal amount of pain medication" and that for about 15 years, trigger point injections had reduced Kaplowitz's pain for "months at a time." She also wrote that Kaplowitz experienced a "severe increase in pain" in late 2011. She concluded that Kaplowitz "is completely unemployable."

Second, in September 2013 Dr. Shapiro completed a medical report and medical assessment. (We will refer to it as the 2013 report.) In that report, she noted that Kaplowitz's pain was moderate to severe and that, as a result of that

4

pain, she could not perform even sedentary work for a sustained period of time. Dr. Shapiro did not, however, note specifically when Kaplowitz became unable to perform sedentary work. She did state that Kaplowitz had been impaired since 1993, but she also wrote that Kaplowitz had experienced a "significant decline over the past 2 years."

Third, in November 2014 Dr. Shapiro gave a sworn statement to Kaplowitz's attorney.[1] (We will refer to it as the 2014 statement.) In that statement, she testified that Kaplowitz's diagnoses were "extremely consistent over the years" and specifically that her diagnosis had not changed after 2001. She concluded that Kaplowitz would not have been able to work after her surgery in 1996 because of the pain. And Dr. Shapiro testified that even a sedentary job (like her job as an office manager) would have been impossible because "sitting is probably the worst position for [Kaplowitz]" and because she could not have lifted the required minimum ten pounds.

## B. ALJ Proceedings

Kaplowitz filed an application for disability insurance benefits on July 26, 2013, alleging that she became unable to work on December 31, 1996 and that she was last covered by disability insurance on March 31, 2002. The Social Security

---

[1] The sworn statement was similar to a deposition. Kaplowitz's attorney asked Dr. Shapiro questions, and she gave answers under oath. The transcript of the sworn statement is 67 pages long.

Administration denied her application on September 27, 2013 and denied her application for reconsideration on December 30, 2013.

Kaplowitz appealed that denial to an Administrative Law Judge. The ALJ held a hearing and heard from Kaplowitz and two experts: Dr. Murray Gilman, a medical expert, and Lorin Lovely, a vocational expert whose testimony is not at issue in this case. Kaplowitz testified that she drove two to three hours a month and that she dressed herself but that she struggled and "[t]here were times" when she needed her husband's help to dress. She testified that she cooked, folded laundry, mopped, swept, and vacuumed but that she could perform those tasks only "moderately" during the covered period. She also testified that she traveled from New Jersey to Florida by plane during that time.

Dr. Gilman testified that he had reviewed Kaplowitz's entire medical record and in his opinion she could have performed sedentary work during the covered period — that is, between December 31, 1996 and March 31, 2002. In his opinion she was impaired during the covered period but her impairment was not so significant as to keep her from being able to perform sedentary work. He also testified that Kaplowitz's impairment grew worse in 2011 and that she could not have performed a sedentary job then. The ALJ also reviewed Dr. Shapiro's three statements and all of the medical records that Kaplowitz provided.

6

Based on a review of the "entire record," the ALJ found that Dr. Shapiro's opinions deserved little weight and that Dr. Gilman's opinions deserved great weight. The ALJ also found that Kaplowitz's testimony about the extent of her pain was not credible. As a result of those findings, the ALJ concluded that Kaplowitz was not disabled as defined under the relevant sections of the Social Security Act during the covered period and that she could have held a sedentary job during that time. The ALJ denied Kaplowitz's application for disability insurance benefits.[2]

Kaplowitz appealed the ALJ's decision to the Social Security Administration Appeals Council, which denied her request for review.

---

[2] The Social Security Act and related regulations establish a five-step, sequential evaluation process to determine whether an applicant is disabled. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011); 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v). Under that process, the ALJ must determine:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

Winschel, 631 F.3d at 1178. The ALJ in this case found that Kaplowitz's impairments did not meet or equal the severity of the specified impairments under step three, so she was not disabled under the regulations. The ALJ also found under step four that Kaplowitz could have performed some of her past relevant work.

7

## C. District Court Proceedings

Kaplowitz sued in March 2017, contending that the ALJ had committed several reversible errors by denying her claim for disability insurance benefits. She moved for summary judgment and contended that the ALJ failed to properly weigh the medical opinions of Dr. Shapiro and Dr. Gilman, that some of the ALJ's factual findings were not supported by substantial evidence in the record and were legally flawed, and that the ALJ's credibility findings were also unsupported by substantial evidence in the record. The Social Security Administration Commissioner also moved for summary judgment, contending that the ALJ properly weighed the medical opinions and that substantial evidence supported all of the ALJ's findings. A magistrate judge recommended granting summary judgment to the Commissioner. Kaplowitz objected, but the district court adopted the recommendation over her objections. Kaplowitz appeals.

## II. STANDARD OF REVIEW

In cases where the Social Security Administration Appeals Council denies review, we review the ALJ's decision as if it were the Commissioner's final decision. Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001). "[W]e review de novo the legal principles upon which the Commissioner's decision is based." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). But the Commissioner's factual findings "are conclusive if they are supported by substantial evidence."

8

Doughty, 245 F.3d at 1278 (quotation marks omitted).  Substantial evidence is a

low bar, requiring less than a preponderance of the evidence; substantial evidence

exists if a "reasonable mind might accept [the evidence] as adequate to support a

conclusion."  Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991) (quotation

marks omitted).  And even if the ALJ did commit an error, that error is harmless if

it did not affect the ALJ's ultimate decision.  Diorio v. Heckler, 721 F.2d 726, 728

(11th Cir. 1983).

## III. ANALYSIS

Kaplowitz contends that the ALJ made two errors.[3]  First, she contends that

the ALJ failed to explicitly state why she rejected Dr. Shapiro's opinion in the

2014 statement.  Second, she contends that the ALJ failed to properly assess her

(Kaplowitz's) credibility, specifically about the amount of pain she experienced.

We address each contention in turn.

### A. Dr. Shapiro's Opinion

Kaplowitz argues that the ALJ erred by failing to explicitly state the weight

she gave Dr. Shapiro's opinion in the 2014 statement that Kaplowitz could not

have performed sedentary work during the covered period.  The ALJ gave the 2013

letter and the 2013 report of Dr. Shapiro, Kaplowitz's long-time treating physician,

---

[3] Kaplowitz does not pursue on appeal her contention that some of the ALJ's non-credibility factual findings were not supported by substantial evidence in the record and were legally flawed.

little to no weight.  And the ALJ gave great weight to the opinions of Dr. Gilman, a non-treating physician who reviewed Kaplowitz's file but never treated her.  But the ALJ did not expressly state what weight she gave Dr. Shapiro's 2014 statement.

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons" why that weight was assigned.  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011).  Absent "good cause," the reviewing ALJ must give the medical opinions of the treating physician "substantial or considerable weight."  Id. (quotation marks omitted).  Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  Id.  (quotation marks omitted).  Even if good cause exists, the ALJ must articulate why she did not give the treating physician's opinion considerable weight.  Id.  Otherwise, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  Id. (quotation marks omitted).

The ALJ found that Dr. Shapiro's opinion in the June 2013 letter was entitled to little weight because it was irrelevant to whether Kaplowitz was able to work in a sedentary job during the covered period, which ended in 2002, because

10

that letter seemed to address Kaplowitz's ability to work in 2013.  In her 2013

letter, Dr. Shapiro said that Kaplowitz's pain was mostly controlled by treatment

until 2011, which was almost a decade after she was no longer eligible for

disability insurance benefits.  And Dr. Shapiro concluded that Kaplowitz "is

completely unemployable," apparently referring to Kaplowitz's inability to work in

2013, not to her ability to work during the covered period.  Taken together, there

was substantial evidence for the ALJ to conclude that the 2013 letter did not say

that Kaplowitz was unable to work during the covered period.

As for the September 2013 report, the ALJ found that the facts in the record

did not support Dr. Shapiro's opinion that Kaplowitz was completely unable to

perform a sedentary job.  There is evidence in the record that the treatment reduced

Kaplowitz's pain during the covered period and that Kaplowitz was able to

perform sedentary work during that time.  Because that evidence supported a

finding contrary to Dr. Shapiro's opinion, the ALJ had good cause to give the

doctor's opinion little weight.  See id. (holding that good cause exists to discount a

treating physician's opinion when the "evidence supported a contrary finding")

(quotation marks omitted).

When discussing the weight she gave each of Dr. Shapiro's opinions,

however, the ALJ did not explicitly state the weight she gave to the opinion

expressed in the 2014 statement.  Kaplowitz contends that was error.  But even

11

though she did not explicitly state the weight she gave the 2014 statement, the ALJ did discuss that statement generally and why it was not supported by the evidence in the record.  It is unclear if that is enough to satisfy the requirement that an ALJ must state with particularity the weight she gives each medical opinion.  Even assuming for purposes of this litigation that it was error, it was harmless error because it did not affect the ALJ's ultimate decision.  Diorio, 721 F.2d at 728.

We know that the ALJ's failure to explicitly state what weight she gave the 2014 statement did not affect her ultimate decision because she clearly considered the opinion Dr. Shapiro expressed in her 2014 statement, found that the evidence supported a contrary finding, and gave the opinion little to no weight — even if she did not explicitly state how little weight.  And because the ALJ evaluated and discussed Dr. Shapiro's opinion in her 2014 statement, we are able to determine "whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  Winschel, 631 F.3d at 1179 (quotation marks omitted).

The ALJ noted that Dr. Shapiro's opinion in the 2014 statement that Kaplowitz could not perform a sedentary job during the covered period was contradicted by her own opinion in the 2013 letter that the impairments significantly worsened in 2011 and by her notes in Kaplowitz's medical records from the covered period.  The ALJ also highlighted portions of Dr. Gilman's testimony that refuted Dr. Shapiro's opinion based on evidence in the record

12

showing that Kaplowitz would still have been able to work during the covered period despite the pain.  The ALJ found that Dr. Shapiro's 2014 opinion that Kaplowitz "had debilitating pain" actually "detract[ed] from the credibility of [Dr. Shapiro's] opinions" because it showed that she did not understand the regulatory requirements to prove that a person is disabled.

Because of the ALJ's discussion and evaluation of Dr. Shapiro's 2014 statement, we know that she considered Dr. Shapiro's opinion that Kaplowitz was unable to work in a sedentary job during the covered period and rejected it because the evidence supported a contrary finding.  And we know that the ALJ's finding was supported by substantial evidence in the record.  There is no reason to conclude that merely articulating the specific amount of weight that she gave to Dr. Shapiro's 2014 opinion would have changed her evaluation of it or her ultimate decision to deny Kaplowitz benefits.  Even if the ALJ erred by failing to state with particularity the weight she assigned Dr. Shapiro's 2014 statement, that error was harmless.

## B. Credibility Determination

Kaplowitz also contends that the ALJ erred by failing to properly assess her credibility.  At the hearing, Kaplowitz testified about her work history, daily habits, medical history, and pain.  The ALJ found that Kaplowitz's statements

13

about the "intensity, persistence and limiting effects" of her pain were "not entirely credible."

An ALJ can reject a claimant's testimony as to her subjective pain but must "clearly articulate explicit and adequate reasons" for doing so. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks omitted). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995).

Here the ALJ clearly articulated the reasons for her finding that Kaplowitz was not credible, at least as to the amount of pain she had suffered during the covered period. The ALJ identified three reasons for her credibility determination: (1) Kaplowitz did not receive the type of treatment one would expect a "truly disabled individual" to receive in part because of the great gaps in time between her treatments for allegedly disabling pain; (2) Kaplowitz admitted that she was able to perform some functional and daily activities during the covered period — including driving, cooking, mopping, sweeping, vacuuming, watching television, and flying from New Jersey to Florida during which she would have had to sit for several hours — that suggest she might also have been able to perform work activities during that time; and (3) the record reflects that Kaplowitz had

14

approximately the same level of injuries from 1993 to 1996 (after the accident but before surgery) and was able to work during that time.

Taking those facts together, substantial evidence supported the ALJ's credibility finding because a "reasonable mind might accept [the evidence] as adequate to" find that Kaplowitz was not credible.  Barnes, 932 F.2d at 1358.  We will not disturb the ALJ's credibility finding.

**AFFIRMED.**[4]

---

[4] This case was originally scheduled for oral argument, but the panel unanimously decided that oral argument was not necessary.  See 11th Cir. R. 34-3(f).